## DAVIS v. PACKARD and others.

Where a party assigned for error in the *court for the correction of errors*, that he was a *foreign consul* at the time of the commencement of the suit against him in the court below, to which the defendant in error put in a joinder of *in nullo est erratum*, because it no where appeared by the record that the plaintiff in error was such *consul*, and the court for the correction of errors *affirmed* the judgment below, which judgment of affirmance was subsequently *reversed* by the *supreme court of the United States* : IT WAS HELD, on the filing of the mandate, that although the court for the correction of errors were bound to reverse the judgment rendered by themselves, they were not obliged to reverse the judgment of the court below, and that under the circumstances of the case the writ of error might be dismissed, which was done accordingly.

MANDATE from the supreme court of the United States. Davis was sued in the supreme court of this state, as *special bail* on a recognizance in a suit of Packard and others against Hill and others, in which suit he pleaded several pleas to the *merits*, on which issues were joined, a verdict rendered in favor of the plaintiffs, and judgment entered accordingly. He then sued out a writ of error removing the record into the *court for the correction of errors* in this state, and there assigned for error, that before and at the time of the commencement of the suit against him in the supreme court, he was and ever since had continued to be *consul-general of the king of Saxony* in the United States, duly admitted and approved as such, by the President of the United States, and that as such consul-general, he ought not, according to the constitution and laws of the United States to have been impleaded in the supreme court of the state of New-York, but in the district court of the United States for the southern district of New-York, or in some other district court of the United States, and that the supreme court of judicature of the state of New-York had not jurisdiction, &c. To this *assignment of error*, Packard and others, the plaintiffs below, put in the following joinder : "And the said Isaac Packard and others, before, &c. at, &c. by D. D. F. their attorney, come and say that there is no error in the record and proceedings aforesaid, nor in the giving of the judgment aforesaid, because they say that it no where appears by the

said record, proceedings or judgment that the said Charles A. Davis ever was consul of the king of Saxony, and they pray that the said court for the correction of errors may proceed to examine the record and proceedings aforesaid, and the matters aforesaid, above assigned for error, and that the judgment aforesaid may be in all things affirmed." On this assignment and joinder, the cause was brought to argument in the court for the correction of errors of the state of New-York and that court *affirmed* the judgment below. *See* 6 *Wendell's R.* 327, &c. Davis then sued out a writ of error, removing the record into the *supreme court of the United States,* which court, in January term, 1833, *reversed* the judgment of the court for the correction of errors in the state of New-York, and remanded the cause to that court, with directions to conform its judgment to the opinion of the supreme court of the United States. The *mandate* is in these words : "United States of America, ss. The President of the United States of America, to the President of the Senate of the state of New-York, the Senators, Chancellor and Justices of the supreme court of the said state, being the judges of the court for the trial of impeachments, and the correction of errors, holden in and for the said state of New-York, Greeting. *Whereas* lately in the court for the trial of impeachments and the correction of errors, holden in and for the state of New-York, before you, or some of you, in a cause between Charles A. Davis, plaintiff in error, and Isaac Packard, Henry Disdier and William Morphy, defendants in error, the judgment of the said court for the trial of impeachments and correction of errors was in the following words to wit : "Therefore it is considered by the said court for the correction of errors, that the judgment of the supreme court aforesaid, be and the same is hereby in all things affirmed. It is further considered, that the said defendants in error, recover against the plaintiff in error, their double costs according to the statute in such case made and provided, to be taxed, in defending the writ of error in this cause, and also interest on the amount recovered by way of damages," as by the inspection of the transcript of the record of the said court, for the trial of impeachments and correction of errors, which was brought into the supreme court of the United States, by virtue

ALBANY,
Dec. 1832.

Davis
v.
Packard.

of a writ of error agreeably to the act of congress, in such case made and provided, fully and at large appears. *And whereas,* in the present term of January, in the year of our Lord one thousand eight hundred and thirty-three, the said cause came on to be heard before the said supreme court, on the said transcript of the record, and was argued by counsel : *On consideration whereof,* it is the opinion of this court ; that the plaintiff in error, being consul general of the king of Saxony, exempted him from being sued in the state court, by reason whereof the judgment rendered by the court for the trial of impeachments and correction of errors is erroneous. *Whereupon it is ordered and adjudged* by this court, that the judgment of said court for the trial of impeachments and correction of errors be and the same is hereby *reversed,* and that this cause be, and the same is hereby remanded to the said court, with directions to conform its judgment to the opinion of this court. You therefore are hereby commanded, that such further proceedings be had in said cause, as according to right and justice and in conformity to the opinion and judgment of said supreme court of the United States and the laws of the United States ought to be had, the said writ of error notwithstanding. Witness the honorable JOHN MARSHALL, chief justice of said supreme court, the second Monday of January, in the year of our Lord one thousand eight hundred and thirty-three." Which mandate had the seal of the supreme court of the United States affixed to it, and was signed by the clerk of that court.

On presenting this *mandate* to the court for the correction of errors, the counsel for the plaintiff in error moved that a rule be entered reversing the judgment of the last mentioned court, and also reversing the judgment of the supreme court of judicature of the state of New-York. At the same time a motion was made by the counsel for the defendants in error *either* that the rule to be entered on the filing of the mandate should declare that in the judgment of the court for the correction of errors, the said court for the correction of errors has not jurisdiction to reverse the judgment of the supreme court of the state of New-York, inasmuch as the said court could not take notice of the consulship of the plaintiff in error, and therefore that the court

declined so to do, *or* that the court in case they should reverse their judgment of affirmance, should at the same time enter an order for the dismissal of the writ of error with costs. These several motions were argued by

ALBANY,
Dec. 1832.

Davis
v.
Packard.

*I. L. Wendell,* for the plaintiff in error.

*A. Taber,* for the defendants in error.

The following opinions were delivered :

By the CHANCELLOR. It appears by the record in this case that the defendants in error sued T. Hill, junior, in the supreme court of this state, in which suit the present plaintiff in error came into that court and entered into a recognizance of bail for Hill in the usual form ; that a recovery was had in that suit against Hill, and an execution against his body returned unsatisfied. The present defendants then proceeded against Davis, the plaintiff in error, upon his recognizance of bail in the same court. He voluntarily appeared in that court, and without making any objection to its jurisdiction, or suggesting that he held any office or sustained any particular character which exempted him from a proceeding against him in a state court, pleaded five several pleas, all of which were found to be false. The supreme court thereupon gave judgment against him for debt and costs, according to the condition of the recognizance, into which he had voluntarily entered in that court. He then sued out a writ of error to this court, without ever having raised the question of jurisdiction in the supreme court, and instead of assigning any errors appearing upon the record or proceedings of the supreme court, he alleged as a ground for reversing the judgment of the supreme court, that at the time of the commencement of the suit against him, he was the consul general of the king of Saxony. This court being of opinion that a judgment of the supreme court could not be reversed upon an error in fact assigned here, and that it had no jurisdiction to reverse a judgment of an inferior court, except for errors apparent upon the face of the record and proceedings of the court below, and that

by the laws of this state, the answer of *in nullo est erratum* to an assignment of error in fact in this court was in the nature of a demurrer, and entitled the defendants in error to an affirmance of the judgment of the court below, if there was no error upon the face of the record—affirmed the judgment of the supreme court. There were other reasons in this case sufficient to authorize the affirmance of the judgment, even if this court had jurisdiction to reverse a judgment for error in fact, and without rendering it necessary that we should decide that a foreign consul was liable to be sued in a state court. But as the supreme court of the United States had no jurisdiction or authority under the 25th section of the judiciary act to reverse the judgment of this court, unless our decision was against the right of the plaintiff in error to be exempt from a prosecution in the state court, it became necessary for that court to presume we had illegally decided that question against the plaintiff, and that our judgment of affirmance was rendered on that ground alone. As it would be a plain and palpable violation of the constitution and law of the United States for the supreme court to reverse our decision upon a question depending upon the local law of the state, which was not repugnant to the constitution or to any treaty or law of the U. States, we are bound to presume that that high court did not intend to decide that this court had jurisdiction to reverse a judgment of the supreme court of this state for an error in fact, although they have not explicitly stated that fact in their mandate. Indeed, it is evident from the mandate, when taken in connection with the written opinion of the judge who delivered the judgment of that court, that they took it for granted that this court had decided that a foreign consul was liable to be sued in the state courts, inasmuch as it was not stated in the record of the judgment of this court that our decision was made on some other ground ; but if the judges of that court had referred to the printed report of this case in *Wendell's Reports*, they would have seen it was taken for granted here that congress had given to the district courts of the United States exclusive jurisdiction of all civil suits, or original proceedings against foreign consuls, and that such jurisdiction was rightfully conferred. So far as the jurisdic-

tion of the state courts was concerned, no member of this court ever doubted that the jurisdiction of the federal courts was exclusive ; but as the constitution of the United States had declared that the supreme court of the United States should have original jurisdiction in all cases affecting ambassadors, ministers and consuls, or where a state should be a party, there might be some doubt as to the right of congress to transfer that jurisdiction from the supreme court to an inferior tribunal.

As the judges of the supreme court of the United States had frequently decided in their circuits that proceedings against bail and by bill in equity to restrain the prosecution of a suit in a court of law, were not to be considered original suits within the meaning of the laws of the United States conferring jurisdiction upon the federal courts, it might reasonably be presumed that the same principle would be applied to the jurisdiction of the state courts ; and I am yet to learn that the supreme court of the United States intend to apply a different principle to the state courts to deprive them of jurisdiction, from that which they apply to the federal courts in order to acquire jurisdiction in cases which are not within the letter of the law. According to the decisions of the supreme court of the United States in *Simms* v. *Guthrie,* 9 *Cranch,* 13, and in *Logan* v. *Patrick,* 5 *id.* 288, and of Judge Story in *Dunlap* v. *Stetson,* 4 *Mason's R.* 360, a bill in equity may be sustained against a party in a federal court, to restrain a suit commenced by him on the law side of the same court, although he would not have been subject to the jurisdiction of that court, if he had not voluntarily submitted himself to its jurisdiction by the commencement of a suit on the law side thereof ; and in *Bobyshall* v. *Openheimer,* 4 *Wash. C. C. R.* 433, the circuit court of the United States for the district of Pennsylvania decided that a person, by giving a bail bond to the marshal, for the appearance of the defendant in a suit in that court, subjected himself to the jurisdiction of that court in a suit upon the bond brought by a citizen of the same state in which the defendant resided, and within which the suit was brought. The law of the United States not having given jurisdiction to the circuit court in suits between citizens of the same state, it

is evident that the jurisdiction of the circuit court could not have been sustained in the cases of *Dunlap* v. *Stetson* and *Bobyshall* v. *Openheimer*, except upon the principle of considering the injunction bill in the one case and the suit upon the bail bond in the other, as a continuance of the original proceedings, to which the defendant had voluntarily made himself a party in the federal court. If a suit upon a bail bond is not an original proceeding within the meaning of the laws of the United States, so as to deprive the circuit court of jurisdiction, I think it would be difficult to maintain that a suit or *scire facias* upon a recognizance of bail is an original proceeding within the meaning of the same laws, so as to deprive the state court of jurisdiction to continue the proceedings against the special bail. As this, however, is a question arising under the constitution and laws of the United States, I am content to leave the federal courts to give such construction to those laws as they may think themselves justified in adopting.

The supposition that the privilege of a public minister is the privilege of his sovereign, and is one which therefore could not be waived, may be correct when applied to ambassadors and other public diplomatic agents who by the law of nations are not liable to be sued at all in the courts of the country to which they are accredited; but this principle is not applicable to the case of a consul or mere commercial agent, who is not entitled to any such exemption. *Viveash* v. *Becker*, 3 *Maule & Sel.* 284. *Vattel*, book 4, § 75. *De La Font's case*, 2 *Nott & McCord*, 217. As to him, it is a mere personal privilege, which he as well as any other defendant may waive. The sovereign has undoubtedly an interest in preserving his public ministers from prosecution in any court of the country to which he is sent; but it can be of no consequence to the sovereign whether his commercial agent is compelled to pay his honest debts by the judgment of the supreme court of this state, or of an inferior federal tribunal.

The question as to the jurisdiction of a state court to review the decision of another court of the same state of inferior jurisdiction, in which the constitution and laws of the United States are in nowise brought in question, is one which belongs to the decision of the state courts alone; and even if the

supreme court of the United States should think the decision of the state court wrong in that respect, they could not, without a palpable usurpation of jurisdiction not conferred by the constitution and laws of the United States upon that court, but which is expressly prohibited by the 25th section of the judiciary act, reverse the decision on that ground. It seems, from the opinion of the judge who delivered the judgment of the supreme court of the United States in this case, when taken in connection with the mandate which has been sent to us, that if a party in a state court claims a right under the constitution or laws of the United States, and this court gives judgment against him, the supreme court of the United States will presume that this court illegally decided against the right thus claimed, unless it appears by the record of this court that the judgment was not given against him on that ground, but some other. I presume, therefore, that if it had distinctly appeared upon the record of the court, as the decision of the court really was, that this court was of opinion that the consul general of the king of Saxony was not liable to be proceeded against by an original suit in the state courts, but that he was not entitled to have the judgment of the supreme court reversed, because he had not claimed his privilege at the proper time nor in the right tribunal, the judges of the supreme court of the United States would not have supposed themselves authorized to reverse the judgment of this court upon a writ of error. The rule, however, in the state courts is different. If it appears that there is any legal ground on which the decision of an inferior tribunal can be sustained, this court will not reverse their judgment on the presumption that it was made upon an illegal ground, but will presume it was made upon the legal one, although the particular ground of the decision is not incorporated into the record of the judgment of the court below ; and even if the record contains a bad reason for the judgment, yet, if it also shows that there were other legal and valid reasons which would have made it the duty of the court to give the same judgment, this court would reject the bad reasoning of the court as surplusage, and sustain their judgment for the valid reasons which might

ALBANY,
Dec. 1832.

Davis
v.
Packard.

have been given therefor. I apprehend the whole difficulty in this case arises from the fact that it is impossible for the judges of the supreme court of the United States to become very intimately acquainted with the local law of particular states, especially that which relates to the jurisdiction and practice of the local courts. But if the learned judge who delivered the opinion in this case in the supreme court of the United States, had referred to his own decision in the case of *Arnold* v. *Sanford,* 14 *Johns. R.* 423, he would have found that a writ of error for error in fact would not lie from the court of exchequer chamber or the house of lords in England to the court of king's bench, which, in point of jurisdiction, answers to our supreme court ; and in *Gomez Serra* v. *Munez,* 2 *Str.* 822, Lord Chancellor King said it was a great absurdity to suppose the court of exchequer chamber had not the power to award a *venire* to try an issue of fact when necessary. By a reference to the case of *Roe* v. *Moore, Comyn's R.* 601, it will also be found that if error in fact is assigned in a court where it is not properly assignable, the replication *in nullo est erratum* is in the nature of a demurrer thereto, and entitles the defendant in error to an affirmance of the judgment. See also *Prior* v. *Wigglesworth,* 1 *Vent.* 207. 2 *Man. & Ryl. R.* 285, *note.*

The provision in the revised statutes authorizing this court to award an issue to try a question of fact arising upon a writ of error here, was not intended to give to this court jurisdiction of a case, which it did not before possess, and which was already amply provided for by the common law by a writ of error *coram vobis* in the supreme court, but the object of the statute was to facilitate the decisions upon questions of fact which might arise in causes where this court before had jurisdiction, as upon a release of errors pleaded to an assignment of errors in law in this court. If any error in fact existed in the proceedings and judgment in the supreme court which was properly assignable for error, Davis should have sued out a writ of error *coram vobis,* returnable in that court, as was done in the case of *Dewitt* v. *Post,* 11 *Johns. R.* 460. And if that court decided wrong upon such writ of error, this court would then have had jurisdiction to correct their proceedings upon a writ of error founded on the latter judgment ; but this

court, like the supreme court of the United States, is strictly an appellate court for the examination and correction of errors actually made by other tribunals, and which appear upon the record of the judgment of the court below. And even if there is an error upon the face of the record, if it relates to a question which was never presented to the court below for its actual decision, this court cannot reverse the judgment on account of that error. *Campbell* v. *Stakes,* 2 *Wendell,* 137. *Houghton* v. *Starr,* 4 *id.* 175. In this case it would be doing great injustice to the judges of the supreme court of the United States to suppose they intended to reverse the judgment of this court upon a question of local law as to which they clearly had no jurisdiction to declare the decision of this court wrong, or that they intended to do more than to decide that a foreign consul was not liable to be sued in the courts of the state ; and I presume if it had appeared in the record as it was stated in the opinion upon which the judgment of this court was founded, that this court decided in the same way, but that the defendant in error was entitled to an affirmance of the judgment of the supreme court because the plaintiff in error had sought his remedy at the wrong time, and in the wrong court, they would not have attempted to interfere with that decision.

Although the judgment of this court has been reversed on a writ of error in the supreme court of the United States, the mandate directs that such further proceedings be had in this cause as according to right and justice, and in conformity to the opinion and judgment of that court and the laws of the United States ought to be had, that writ of error to the contrary notwithstanding. I think, therefore, the defendants in error are entitled to a judgment declaring that by the constitution and laws of the United States a consul general of the king of Saxony was exempted from being sued in the state court, but that this court has no authority or jurisdiction by the laws of this state to reverse a judgment of the supreme court upon any errors in fact assigned in this court, and which do not appear in the record and proceedings of the supreme court, and that the judgment for that reason should be affirmed with double

ALBANY,
Dec. 1832.

Davis
v.
Packard.

costs and damages ; but as the defendant in error has asked to have the writ of error quashed, instead of having an affirmance of the judgment, which will enable the plaintiff in error to bring his writ of error *coram vobis* in the proper court, if his remedy is not already barred by the statute of limitations, I shall vote to quash the writ of error with costs, and to give to the defendants in error the interest on their judgment in the court below by way of damages.

The supreme court of the United States is admitted to be a court of limited powers ; it has no general jurisdiction to review the judgment of the state courts. By the constitution and laws of the United States its jurisdiction is confined to particular classes of cases. Should that tribunal attempt to reverse the judgment of the state court in a case over which it evidently had no jurisdiction, it might be proper for the judges of this court who have sworn to support the constitution of the United States, to enquire whether they could conscientiously do any affirmative act to carry into effect what they believed to be an unconstitutioual exercise of power ; or whether they should not leave that tribunal to execute its own judgment as it might, and by the employment of such means, if any, as were legally within its control. That question, however, does not arise here, as we are bound to presume that court has not gone beyond its jurisdiction, if we can reconcile its decision with a legitimate exercise of its constitutional powers in any other way. Here they have taken it for granted that this court had jurisdiction by the local law to reverse a judgment of the supreme court for error in fact assigned in this court, and that it was not necessary for a defendant in the supreme court to make his objection to its jurisdiction there ; but inasmuch as doubts were suggested on those questions on the argument of the writ of error in the supreme court of the United States, they have not considered themselves authorized to reverse the judgment of the supreme court, and have sent the cause here that such judgment might be given as was consistent with their construction of the constitution and laws of the United States, relative to the exemption of a foreign consul from prosecution in a state court.

The CHANCELLOR then read a rule or order drawn up by him, which he proposed should be entered, which was subsequently adopted by the Court, and will be found at the end of this case.

By Mr. Justice SUTHERLAND. The questions to be determined by us are—what has been decided in this case by the supreme court of the United States, and what is necessary to be done to give effect to the judgment of that court? We have the opinion delivered by Mr. Justice Thompson, in the reversal of the judgment of this court, from which it manifestly appears, that that court considered this court to have decided in affirming the judgment of the supreme court of this state, that the fact that Charles A. Davis was consul-general of the king of Saxony was not sufficient cause for reversing the judgment rendered by the supreme court—because from the record it appeared that was the only question presented for the judgment of this court, and it not appearing from the record that any objection had been taken that the exemption of the plaintiff in error had not been set up in proper time, or that the judgment of this court was founded upon any other consideration than that assumed as above as the ground of decision. Now in relation to the right of state courts to entertain jurisdiction of suits against foreign consuls, there is no difference of opinion between this court and the supreme court of the United States; nor did this court affirm the judgment of the supreme court of this state upon the ground upon which the supreme court assumes the decision was made. The judgment was affirmed because the plaintiff in error by the laws of this state had not the right, after suffering a judgment to pass against him in the supreme court, to raise the question of his exemption for the first time in this court. The questions whether the plaintiff in error had not waived his exemption by neglecting to plead it in the supreme court, and whether error in fact in a case like this can be assigned in this court, it is true, are adverted to in the opinion of Mr. Justice *Thompson* ; but what he says upon those points is to be regarded merely as his impressions upon questions casually raised by counsel, but not presented by the record for the deliberate opinion and judgment of the

court. All who are familiar with the proceedings of courts well know that opinions thus expressed upon the collateral branches of a case which constitute no part of the foundation of the judgment of the court, are never regarded as the deliberate and definitive opinions even of the judge who expresses them, much less of the court where it consists of several judges. To guard against any misapprehension upon this point, Judge Thompson, in the conclusion of his opinion says, "But the reversal of this judgment is put on the ground that from the record we are left to conclude that the court for the correction of errors decided that the character of consul-general of the king of Saxony did not exempt the plaintiff in error from being sued in the state court." All that the supreme court of the United States have decided, then, is, that a consul-general. of a foreign government, resident here, is not liable to be sued in a state court, and they reversed the judgment of this court, because from the record, which alone they could regard, it appeared that this court had held that he might be sued in a state court. Now we all know, and the supreme court of the United States was undoubtedly perfectly aware, that in point of fact this court never decided any such thing ; that its judgment proceeded exclusively upon the ground that as the plaintiff in error had omitted to set up his exemption in the supreme court, this court could not entertain and pass upon it as an original question. The supreme court of the United States accordingly simply reversed the judgment of this court, without giving any directions as to its ulterior proceedings. It seems to me, therefore, that we are at liberty to enter a new order or judgment in the case, setting forth the grounds on which we proceed. The precise matter decided by this court will then appear upon the record, and may be presented for the distinct and deliberate judgment of the supreme court of the United States, if the plaintiff in error should still feel himself aggrieved. There is no disposition on the part of this court to obstruct or evade the judgment of the supreme court of the United States, but a due regard to the rights of the parties concerned, as well as a proper self respect, forbid that we should go in advance of the judgment of that court, and abandon principles appertaining to the jurisdiction of

this court, which have long been considered as well settled, and which in this very case have been solemnly adjudged, when those principles have never been presented in an appropriate form for the consideration of the supreme court of the United States, and have never undergone its judgment.　I perceive no objection, therefore, to concurring in the order proposed by the Chancellor to be entered.

By Mr. Senator SEWARD.　The first question presented by this motion is, what must be the action of this court, in order fully to obey the mandate of the supreme court of the United States ?　The judgment of this court was, that the judgment of the supreme court of this state be affirmed.　By the mandate of the supreme court of the United States, it is declared that the judgment of this court be reversed, and we are commanded to render judgment in conformity to their judgment. Of course we are required to vacate the former judgment of this court.　Suppose we have thus far complied with the directions of the mandate, the attitude of the cause is this : There is a judgment of the supreme court of this state, in favor of the defendants in error against the plaintiff in error.　The plaintiff in error has assigned in this court for error in fact, that at the time of the commencement of this suit against him in the supreme court, he was consul general of the king of Saxony, and of course was suable only in the courts of the United States.　To this assignment of error, the defendants in error have pleaded that no such error appeared in the record of the cause in the supreme court.　Upon the record containing this informal issue, we are required by the mandate of the supreme court of the United States, to render judgment between the parties, with the direction that the judgment so to be rendered, shall be " conformable to the judgment and opinion of the supreme court of the United States, and with the constitution and laws of the United States, the said writ of error notwithsthanding."　It becomes important then, to ascertain what are the judgment and opinion of that court, to which we are required to conform our judgment.　The supreme court of the United States in their opinion delivered by judge Thompson say, the question legitimately presented by

the issue joined in this court is, whether the office of consul general of the king of Saxony entitled the plaintiff in error to an exemption from being sued in the supreme court of this state. Upon this issue it is the opinion of the supreme court of the United States, that the judgment heretofore rendered by this court is to be regarded as a decision, that the character of consul general of the king of Saxony did not entitle the plaintiff in error to the exemption before mentioned. The judgment and opinion of the supreme court of the United States is, that this decision of this court was erroneous, and for that error the judgment of this court is reversed. The opinion of the supreme court of the United States is, that upon the beforementioned question the decision of this court should have been, that the character of consul general of the king of Saxony did entitle the plaintiff in error to an exemption from being sued in the supreme court of this state. It is further the opinion of the supreme court of the United States, that on this record no question was or could be raised in this court or in that court, whether the plaintiff in error could assign his privilege as error in fact in this court. Now, when we are to render judgment in conformity to the opinion and judgment of the supreme court of the United States, we must necessarily regard their ascertained and defined opinion of the nature of the issue upon which the judgment is to be rendered. We have no other light to guide us. We who sit here to render judgment, are to pronounce that judgment, not as judges who by the return of the record to us, are invested with power to hear again and re-adjudge this cause and decide upon it as an original question. If such were the case, most of us, I might perhaps say all but the Chancellor, are disqualified by the statute from rendering judgment, for we have heard no argument of the cause ; yet we are bound to render judgment. How then can we render judgment, otherwise than ministerially, by way of correcting under direction of the supreme court of the United States, a judgment of this court heretofore, rendered ? In order to pursue this direction, our judgment must be rendered upon the issue, and in reference to the question involved in the cause, as decided by the supreme court of the United States. How otherwise, than by the record, mandate, and

opinion of the supreme court of the United States, can I or any other member of this court, who was not here when the judgment was rendered, be informed of the true state of the case as it was when that judgment was rendered. If then the legitimate question presented by the issue in this cause be, whether the character of consul general of the king of Saxony entitled the plaintiff in error to an exemption from being sued in the supreme court of this state, and if our former affirmance of the judgment of the last mentioned court was a decision that his character as such consul did not entitle the plaintiff in error to the exemption demanded, then the reversal of the judgment of the supreme court of this state must be the only judgment which can be rendered by this court consistent with the issue contained in the record, and conformable to the judgment and opinion of the supreme court of the United States; and that judgment would be a decision that the character of consul general did entitle the plaintiff in error to the exemption which he claimed. The judgment of affirmance pronounced by this court was a judgment denying the plaintiff in error the exemption. It is the judgment and opinion of the supreme court of the United States that this denial was erroneous. The judgment which we are now required to render so as to correct the error, must be the converse of that which was erroneous, that is to say, it must be a judgment granting to the plaintiff in error the exemption claimed. The claim of privilege was not that the plaintiff in error ought not to be sued in this court, but that he had been erroneously sued in the supreme court. The judgment of this court was that he was not erroneously sued in the supreme court. The opinion and judgment of the supreme court of the United States is, that the plaintiff in error was erroneously sued in the supreme court of this state. Of course, the judgment we are now required to render, if it be made to conform to that opinion and judgment, must be that the plaintiff in error was erroneously sued in the supreme court of this state, and the judgment which should be rendered to express this decision, can only be a reversal of the judgment of the supreme court of this state.

It has been suggested that we are allowed by the mandate a latitude in respect to the judgment to be rendered, within

ALBANY,
Dec. 1832.

Davis
v.
Packard.

ALBANY,
Dec. 1832.

Davis
v.
Packard.

the limits of which we may dismiss the writ of error in this cause. The words in the mandate which are supposed to afford this latitude, are those which direct that our judgment shall be made " conformable to the constitution and laws" of the United States. This I am constrained to think a forced and not very logical construction of these words. The judgment and opinion of the supreme court of the United States are, that the former judgment of this court was erroneous, because it was not conformable to the constitution and laws of the United States. The judgment and opinion of the supreme court of the United States are, as I have before proved, that according to the constitution and laws of the United States, the judgment of this court should have granted to the plaintiff in error the exemption demanded by him in his assignment of errors; so that the words in the mandate relied upon as allowing the latitude supposed, are merely cumulative, and confer no direction, but simply declare what without them would be inferred, to wit, that the judgment and opinion of the supreme court of the United States must be conformed to, because they are according to the constitution and laws of the United States. In claiming the latitude mentioned, much reliance is placed also upon the words in the mandate " notwithstanding the said writ of error." But these are merely technical words, not enlarging or rendering vague the previous directions of the mandate. The true construction of the mandate is, your judgment is erroneous, because you denied the exemption claimed by the plaintiff in error. The plaintiff in error was entitled by the constitution and laws of the United States to a judgment, granting the exemption claimed. You are therefore directed to vacate your judgment and to render a judgment conformed to our opinion and judgment hereby expressed, and to the constitution and laws of the United States, as by our opinion and judgment we expound them, and this judgment you are to render, notwithstanding the cause has been brought to us for our judgment by writ of error from before you. If I have not altogether misapprehended the case thus far, I have shown that by the mandate of the supreme court of the United States we are required not only to reverse the judgment of this court by which the judgment of the su-

preme court of this state was affirmed, but we are also requir-
ed to render such a judgment as will be a decision that the
plaintiff in error was not liable to be sued in the supreme court
of this state, which judgment can only be that the judgment
of the supreme court of this state be reversed.

The motion made on the part of the defendants in error,
that this court dismiss the writ of error by which the judg-
ment of the supreme court of this state was brought under re-
view, cannot be granted without disobedience or evasion of
the mandate. Regarded in this point of view, the question
now before the court, assumes all that interest which attaches
to every question of conflicting jurisdiction, between the courts
of the United States and those of the several states. I am
aware it is urged we may consistently with the mandate dis-
miss the writ of error, on the ground that although we admit
the plaintiff in error was not liable to be sued in the supreme
court, yet we have no jurisdiction of the issue of error joined
in this court; and it is contended that if we so dismiss the
writ of error, assigning upon the record the reasons for adopt-
ing this course, our judgment will be sustained by the su-
preme court of the United States. But I deem this position
altogether fallacious. We have now no power to alter the
record of this cause as it came before this court, from the su-
preme court of the United States; nor have we power to va-
ry the issue before this court, and the reason is obvious: the
cause belonged to the supreme court of the United States. It
has been remanded to us, with direction to render judgment
of a particular force and effect. We cannot avail ourselves of
the record to render a judgment different from that which we
are required to render, nor to dismiss the writ of error, which
would be tantamount to rendering judgment against the par-
ty in whose favor we are commanded to pronounce judgment;
nor can we make any alterations in the record, the effect of
which would be prejudicial to either of the parties who litiga-
ted in the supreme court of the United States. The state-
ment of reasons to justify our dismissal of the writ of error
would be a variance in the record affecting the rights of the
parties. Nor is it safe in this instance or as a precedent to
adopt such a course. The judgment is to be rendered, not

ALBANY,
Dec. 1832.

Davis
v.
Packard.

according to our present views of the case, but according to what is the legal view of the case, and that legal view is defined by the supreme court of the United States. Now this view thus settled, presents only one point upon which this court can deliberate or decide, to wit, whether the character of consul general of the king of Saxony entitled the plaintiff in error to an exemption from being sued in the supreme court of this state. To assign reasons for dismissing the writ of error is no less than by an act of the court to insert an indirect issue upon the question of the jurisdiction of this court. Let us suppose that upon this assignment of error in fact and this plea of *in nullo est erratum,* the court should now dismiss the writ of error. We should do it in violation of the opinion of the appellate court, that the legitimate effect of the issue is whether the character of the plaintiff in error as consul general entitled him to the exemption claimed. Shall we excuse the violation by altering the record and inserting an allegation that the time, place and manner in which the plaintiff in error set up this exemption were improper, when the supreme court of the United States have declared, in assigning their reasons for reversing the judgment, that no objection was raised in this court as to the time, place and manner of setting up this exemption ? What is this but saying the supreme court of the United States have overlooked an important point inferrible from the record, and therefore have erroneously directed us to render judgment in the cause, and we will therefore state upon the record this oversight of that court, and render no judgment whatever. To me it seems a plain proposition, that if the supreme court of the United States have rightly decided that the issue presented was such an one as would sustain the judgment of this court upon the merits, had it been correctly made, it is such an one as requires that the court shall render a correct judgment upon the merits. It has been urged that the opinion of the supreme court of the United States, pronounced by Judge Thompson, indirectly implies that the writ of error from this court to the supreme court of this state should have been dismissed by this court, instead of the former judgment of this court having been rendered ; and therefore it is contended that this court may now do what by

the supreme court of the United States it is admitted it ought before to have done. With all deference, I am compelled to deny both the fact assumed and the inference. In the opinion of Mr. Justice Thompson, it is urged, indeed, that the judgment of the court of errors could not, as was contended, have proceeded upon the ground that the matter assigned for error was not error because it was not pleaded in the court below, from the fact that the court of errors decided upon the merits instead of dismissing the writ of error, and the same argument was used when this cause was before the supreme court of the United States, on a motion to dismiss the writ of error. 6 *Peters*, 49. But that court no where say that this court could, on these pleadings, have dismissed the writ of error from this court to the supreme court of this state, and on the other hand, in both the opinions to which I have referred, they maintain that the issue before this court required a judgment upon the merits, and assume, if they do not prove, that this court had jurisdiction to render such a judgment. If, then, the writ of error be now dismissed, and the cause again be brought before the supreme court of the United States, bearing upon the face of the record a substantial issue upon the question of the plaintiff's privilege, with a judgment thereon neither granting or denying the privilege, but evading a decision thereon, it is at least to be expected that it will be remanded to us, with direction to render a judgment in conformity with the previous instructions of the court. It would be a novel feature in the practice of appellate courts to make the record a kind of diplomatic medium of communication between such courts and inferior tribunals, the appellate court suffering the subordinate court to vary the presentation of facts or reasons contained in the record, and assign new facts or reasons as often as the appellate court should overrule the decision of the inferior tribunal. The comity of such an appellate court would greatly exceed its efficiency in the administration of justice. The question before the supreme court of the United States was, whether the judgment of this court was correct, not whether the court assigned correct reasons for its judgment. Whatever reasons might legitimately have operated, or ought to have operated upon the minds of this

court, it is necessarily to be presumed were considered by the appellate court, and were found to be insufficient to sustain our judgment.

I proceed next to examine the reasons urged against the motion to reverse the judgment of the supreme court. In the first place, it is said that this court had no jurisdiction over the record of this cause sent from the supreme court of this state, to review the judgment thereof upon an assignment of error in fact. This argument presents the singular proposition, that this court has assumed (therefore has decided it had jurisdiction) to render judgment of affirmance of a judgment of the supreme court, but is now to decide when the judgment of affirmance is found to be erroneous, that it has not jurisdiction to render a judgment of reversal upon the same issue and under precisely the same circumstances. The supreme court of the United States have correctly decided that this court assumed on the former hearing the very jurisdiction it is now invited to disclaim. The error found in our judgment, let it be remembered, is that we erred, not in assuming to decide, but in deciding wrong. If the court, then, exceeded its jurisdiction in deciding at all, no such error has been complained of to the supreme court of the United States; that court has found none; it is not now for us to correct it; it is too late, so far as this cause and these parties are concerned. What we are commanded to do is not to decide that the court then erred in assuming jurisdiction, but the jurisdiction being no longer debatable, it is to render a correct judgment in lieu of the former erroneous judgment. The mandate requires us to assume this jurisdiction. To allege we have not the power or right conferred by the constitution and laws of this state to assume the jurisdiction and render judgment, is to maintain that the supreme court of the United States has decided erroneously, for which reason we are not bound to submit; and what is this but the subordinate tribunal refusing to yield to the decisions of the superior—the inferior court reviewing the decisions of the appellate court? By the constitution and laws of the United States, it is declared that in certain cases the supreme court of the United States shall have appellate jurisdiction over this court. The right of appellate jurisdic-

tion cannot exist, unless it be complete, absolute and unlimited as regards the inferior tribunal. In the appellate court must be vested, in every case brought before it, the right to decide whether the case be such as falls within its appellate jurisdiction ; for if the inferior court could lawfully resist on the ground of absence of jurisdiction in the appellate court, then the inferior court, and not the appellate court, would be the tribunal to determine the extent of jurisdiction of the appellate court. Of course the inferior court would exercise the paramount power : which is absurd. Necessarily, also, the appellate court must have the right to decide whether error has been committed, and to direct the manner and extent of remedy. If it had not such right, then the inferior court would obey such mandates as it should think proper to obey, and would resist such as it should think proper to resist. This also would be to elevate the subordinate over the appellate tribunal. The principle I have asserted is not new ; it prevails in the constitution of this state. The power of this court to review the errors of the supreme court and court of chancery is accompanied by the power to decide not only in what cases this court has jurisdiction, but to define also the limits of their jurisdiction, and to prescribe the manner and extent of the correction of errors ; and as properly may either of those courts refuse to render such judgment as we direct upon the ground of our want of jurisdiction or usurpation of jurisdiction, as this court allege these objections against a judgment of the supreme court of the United States. Nor do I think there is any ground for alarm in the power which I am free to admit is thus conceded to the supreme court of the United States. Acting under a due sense of their responsibility, that court have never yet abused the power conferred upon them by the constitution. Its judges being amenable to impeachment, and all its judgments subject to the conservative legislation of congress, the supreme court of the United States may be obeyed with much more safety, as regards the liberty and rights of the people, than the courts of the several states be allowed to erect barriers, as may suit their interests or caprice, against the exercise of jurisdiction of the appellate court. The power to decide correctly, and enforce a decision when correctly

made, necessarily implies the same power to decide incorrectly, and enforce a decision when incorrectly made. I will not now examine whether the supreme court of the United States have decided correctly concerning the powers and jurisdiction of this court, or whether that court erroneously decided upon the merits or even the nature of the issue in this cause. In the light in which I have examined the subject, all these questions are foreign to the grounds upon which the decision of this court on this motion should be pronounced. I am therefore of opinion that this court do render judgment, reversing the judgment of the supreme court of this state.

Mr. Senator SUDAM expressed his opinion that the proper course to be pursued in this case would be to reverse the judgment of affirmance of this court, and that then the cause would stand here as it did previous to the rendition of judgment in this court. He believed if the reasons upon which the judgment of this court was founded, had appeared on the record sent up to the supreme court of the United States, the decision of that court would have been different from what it was. He concurred in the propriety of entering the order proposed by the chancellor, and then the plaintiff in error, if he thought proper, might take up the decision of this court for review.

The rule or order proposed by the chancellor to be entered, is in these words :

" The plaintiff in error in this cause having removed the transcript of the record of the judgment in this cause, heretofore given in this court, into the supreme court of the United States by a writ of error ; and on reading and filing the mandate of the said supreme court of the United States, by which it appears that the said supreme court of the United States have reversed the judgment of this court, and have remanded the cause to this court, with directions to conform its judgment to the opinion of the said supreme court of the United States, and that such further proceedings be had in this cause, as according to right and justice, and in conformity to the opinion and judgment of the said supreme court of the U. States ought to be had, the said writ of error notwithstanding ; and

on hearing counsel, as well on behalf of the plaintiff as the said defendants, it is thereupon declared and adjudged by this court, that a consul general of the king of Saxony is, by the constitution and law of the United States, exempted from being sued in a state court. It is further adjudged and declared, that the supreme court of the state of New-York is a court of general common law jurisdiction, and that by the laws of this state, this court has no jurisdiction, power or authority to reverse a decision of the said supreme court for any error in fact, or any other error than such as appears upon the face of the record and proceedings of the said supreme court, and that no other errors can be assigned or regarded as a ground of reversal of a judgment of the said supreme court than such as appear upon the record and proceedings of the said supreme court, and which relate to questions which have actually been brought before the justices of that court for their decision thereon, by a plea to the jurisdiction of that court or otherwise; and that this court was not authorized to notice the allegation of the said Charles A. Davis, assigned for error in this court, that he was consul general for the king of Saxony; or to try the truth of the said allegation, or to regard the said allegation as true, and that by the laws of this state, the replication of the defendants to an assignment of errors that there is no error in the record and proceedings, or in the giving of the judgment of the supreme court, was not an admission of the truth of any matter assigned as error in fact, or which was not properly assignable for error in this court, and that if there was no error upon the face of the record of the proceedings in the supreme court, the defendant in error was entitled to a judgment of affirmance, according to the laws of this state, any matter assigned for error in fact to the contrary notwithstanding. And it is further declared and adjudged, that by the laws of this state, if there is any error in a judgment of the said supreme court, or in the proceedings, which is properly assignable for error in fact, the party aggrieved by such error may sue out a writ of error *coram vobis*, returnable in the said supreme court, upon which the plaintiff in error may assign errors in fact; and if such errors in fact are admitted, or are found to be true by the verdict of a jury upon an issue joined thereon, the said su-

preme court may revoke their said judgment, and that for any error in the judgment of the said supreme court upon the said writ of error *coram vobis*, this court has jurisdiction and authority, upon a writ of error to the said supreme court, to review the said last mentioned judgment, and to give such judgment in the premises as the said supreme court ought to have given. It is therefore the opinion of this court that although the said Charles A. Davis, the plaintiff in error in this cause, might have been the consul general of the king of Saxony, and as such was not liable to be sued in the state court, yet, inasmuch as the fact that he was such consul general no where appeared in the record of the judgment of the said supreme court, the defendants in error are entitled to the judgment of this court affirming the said judgment of the said supreme court. But the defendants in error having, upon the filing of the said mandate of the said supreme court of the United States, applied to this court to dismiss the writ of error to the said supreme court of this state, it is therefore ordered and adjudged that the said last mentioned writ of error be quashed; and it is further ordered and adjudged that the said defendants in error recover against the plaintiff in error their costs in this court, according to the statute in such case made and provided, to be taxed, and also interest on the amount of the judgment of the court below by way of damages; and that the proceedings be remitted to the said supreme court of this state.

On the question being put, *Shall the rule or order proposed by the Chancellor be entered?* the members of the Court voted as follows:

In the *affirmative*—The CHANCELLOR, Mr. Justice SUTHERLAND, and Senators ARMSTRONG, BEARDSLEY, BRONSON, CONKLIN, CROPSEY, DEITZ, EDWARDS, FISK, FOSTER, GANSEVOORT, HALSEY, HASBROUCK, LANSING, MACDONALD, M'DOWELL, STOWER, SUDAM, WESTCOTT—20.

In the *negative*—Senators BIRDSALL, GRIFFIN, SEWARD—3.

Whereupon the order was accordingly entered.