PECKHAM (FERGUSON v.). See Case No. 4,741.

---

## Case No. 10,899.

### PECKHAM et al. v. LYON.

[4 McLean, 45.] [1]

Circuit Court, D. Michigan. June Term, 1845.

POWER OF ATTORNEY — DEPARTURE FROM TERMS OF THE POWER—INTENTION—WITNESS—INTEREST IN CONTROVERSY—RELEASE.

1. A letter of attorney which authorizes an agent to purchase a certain steamboat from A.

[1] [Reported by Hon. John McLean, Circuit Justice.]

B. and to draw bills on the principal for such amounts, and payable at such times as should be agreed upon between them, does not authorize the agent to purchase the boat from other persons.

2. The principal appears to have placed a special trust and confidence in A. B., as to the amount to be paid and the times of payment; and this can not be dispensed with by the agent.

3. The intention of the parties can not be shown different from the written power.

4. The agent who, contrary to the power, associates himself as one of the purchasers of the boat, is interested in the purchase, and can not be used as a witness.

5. A release of all claims on him, by the plaintiffs, under the special counts, does not restore his competency. As a joint purchaser he is liable for the boat, and may be made liable, if the defendant shall not be bound.

At law.

Joy & Porter, for plaintiffs.
Mr. Fraser, for defendant.

OPINION OF THE COURT. This is a motion for a new trial. The action was brought to recover the amount of the several bills of exchange, drawn by G. M. Mills, payable to the order of Peckham and Borden, and directed to John Almy, Esquire, attorney for Messrs. Charles H. Carroll and Lucius Lyon, amounting to six thousand dollars. These bills were drawn under a letter of credit, of which the following is a copy:

"Hemon Walbridge, Esq.—Sir: George M. Mills is hereby authorized to purchase the steamboat belonging to you and others, for such sums of money, and payable at such times, as shall be mutually agreed upon between you and him. And he is authorized to draw on me as the agent and attorney of Charles H. Carroll and Lucius Lyon, by drafts or otherwise, as said payments become due; which said drafts will be duly honored. Yours, etc., J. Almy, Attorney for Charles H. Carroll and Lucius Lyon. Detroit, Sept. 12, 1836."

The declaration contained special counts against Lyon, as acceptor of the bills, and also the common counts for goods sold, money, etc. It was proved that Almy was authorized by Carroll and the defendant to give Mills the letter of credit. That he was sent with it to Toledo, to buy a steamboat called the Caledonia, afterwards Don Quixotte. That this steamboat was, at the time the letter was written, owned by Hemon Walbridge and others, but that Walbridge had sold his interest to plaintiffs, who were the other joint owners with Walbridge, at the time the letter was written. That Mills exhibited his letter of credit to the plaintiffs, made a trade with them for the boat, drew the drafts in payment, and gave them, with the letter of credit, to the plaintiffs, who thereupon agreed to deliver the steamboat to him. This was proved to be the steamboat he was sent to purchase. She was wrecked in going to the place of destination, and never came into possession of the defendant. It was also proved that Mills bought the boat for the joint benefit of himself, and Carroll and Lyon. That with the assent of Carroll and Lyon, he had paid for one quarter of the boat by an exchange of his property consisting of a house and lot at Tremoinsville, and had drawn the drafts upon which the suit is brought, for the other three-fourths of the purchase money. This was all understood by Carroll, Lyon, Almy, and Mills, and the matter was subsequently arranged between them, when the stock in the boat should be divided, after its arrival at Grand river. A full release had been executed to Mills by the plaintiffs, of all liability to them upon the drafts, in consequence of a verdict, etc. Almy's handwriting and signature to the letter of credit were proved; and it was also proved that he had authority to give the letter, etc. The drafts were then offered in evidence, but were objected to on the ground that Mills had exceeded his authority under the letter of credit, in this, that he had made his contract with Peckham & Borden, the plaintiffs, whereas, by the letter of credit he was only authorized to settle the terms as to price and terms of payment, with Hemon Walbridge alone. And the court sustained this objection.

The plaintiffs' counsel then offered to prove by Mills, that the letter was given with the supposition that Walbridge was the part owner of the boat, and that the object of the letter was to buy the boat, and that the form of the letter was accidental, and that it was not the intention of the party, to limit him to contract with Walbridge, but to give him full authority to buy the boat. To this evidence the counsel for the defendant objected, upon the ground, that no parol testimony could be given to explain this written instrument, which was unambiguous; and also upon the ground that it contradicted the written instrument. The objection was sustained by the court, and the testimony was not admitted. The plaintiffs then offered Mills as a witness, to prove that Lyon had subsequently recognized the contract made by Mills, and had acted as the owner or part owner of the boat under the contract. The witness was objected to, on the ground that it appeared from the testimony, he himself was one of the joint purchasers under the contract, and of course was jointly liable for the full payment of the purchase money. The court sustained the objection, and refused to admit the witness; whereupon the plaintiffs voluntarily suffered a nonsuit.

On the above rulings of the court, the motion for a new trial is made. The bills were objected to, on three grounds: 1st. That they were not drawn in strict accordance with the letter of credit given in evidence, which letter was directed to Hemon Walbridge, Esquire, and contemplated a mutual agreement to be made between him and Mills, in reference to the boat, to authorize the drawing of the bills. Where the words of a power are ex-

plicit and no doubt can arise on their construction, it would be a dangerous principle to establish, that a court may construe them differently, in accordance with the supposed intention of the parties. The letter of authority was not only directed to Walbridge, but it was intended that the contract should be made with him, and not with others who had an interest in the boat. The language is: "Mills is hereby authorized to purchase the steamboat belonging to you and others, for such sums of money, and payable at such times, as shall be mutually agreed upon between you and him." Now here was evidently a confidence reposed in Walbridge exclusively, not only as to the price of the boat, but also as to the times of payment. This trust was not extended even to the partners of Walbridge. Much less can it be fairly construed to extend to any persons who might own the boat. Where the power is thus restricted, it is not for a court to say the restriction was unwise, or that the persons giving the power, authorized a thing to be done, different from the clear import of their words. Such a rule of construction would assume a power rather to make contracts than to construe them.

On the supposition that Almy was fully authorized to act in the premises, in saying that the bills should be honored, it might be construed as an acceptance in advance, or an obligation to accept. But what bills did he, as the agent of Carroll and Lyon, say should be honored? They were such as to amount and times of payment, as should be mutually agreed upon between Mills and Walbridge. The letter of authority is susceptible of no other construction. It will be observed that the special counts are not founded on the delivery of the boat, or on an express acceptance of the drafts, but an acceptance from the obligation imposed by the letter of attorney to Walbridge. Now if the drafts drawn were not the drafts contemplated by the above letter, under what pretence can it be said they were bound to accept them? Mills interposed himself as a party, not contemplated by the power. Carroll and Lyon may have agreed to this arrangement, but it was not within the power of attorney, and to that we must look exclusively, to ascertain whether Carroll and Lyon were bound to accept the bills. If they were not so bound, then there was no acceptance, and this action can not be maintained. [Edmondston v. Drake] 5 Pet. [30 U. S.] 636; [U. S. v. Bank of the Metropolis] 15 Pet. [40 U. S.] 395; [Grant v. Naylor] 2 Pet. [27 U. S.] Cond. R. 95 [4 Cranch (8 U. S.) 224]; 10 Johns. 180; 3 Wils. 539; 6 Cow. 354; 8 Wend. 494; 9 Wend. 54, 68; 4 Cow. 645; 2 Johns. 48; 5 Johns. 59; 7 Johns. 393; 10 Johns. 180; 10 Wend. 57; 7 Wend. 315.

The objection is not without force, that a contract to bind the principal, should be made in his name; and in this view, if the obligation to accept the bills was binding on any one, it must have bound Almy to accept. This, however, is rather a technical ground, and it does not seem to be necessary to rely on it.

The above positions are met by the plaintiffs on the ground that the intention of the purchasers was carried out, and that is to be regarded in giving a construction to the letter of attorney. The intention of the parties can never be disregarded, but how is that intention to be ascertained? The only safe rule is, to ascertain the intention from the language used by the parties. 1 Term R. 703; 2 Bing. 522; Chit. Cont. 212; 4 Maule & S. 422; 6 Maule & S. 9, 12. Mills was, clearly an interested witness. He was released from liability on the special counts only, which set out the bills drawn by him. He had an interest of one-third of the boat, and was interested in sustaining the contract he made, by which he might exculpate himself from responsibility under the power. The boat in question was unfortunately wrecked, and the contest is, who shall suffer the loss. The case turns, as before remarked, on the letter of attorney; and the acts done by Mills in the purchase and drawing of the bills.

Upon the whole, we feel ourselves bound to overrule the motion for a new trial.