MASSEY *v.* DUNLAP ET AL.

[No. 17,973. Filed September 22, 1896: Rehearing denied Dec. 2, 1896.]

LICENSE. — *Intoxicating Liquors.* — *Remonstrance.*— *Statute Construed.*—Where an application is made to obtain a license to sell intoxicating liquors within the boundaries of an incorporated city, only the legal voters residing within the particular city ward in which such business is proposed to be conducted are authorized, under section 9 of an Act of March 11, 1895 (Acts 1895, p. 248), to join in a remonstrance against the granting of such license, and a majority of such voters will be required to defeat the application.

SAME.— *Intoxicating Liquors.*— *Remonstrance.*— *Separate Remonstrance Must Be Directed Against Each Applicant.*—*Statute Construed.*—Under section 9 of Act of March 11, 1895 (Acts 1895, p. 248), a remonstrance against the granting of a license to sell intoxicating liquors as provided for by said section applies to some particular applicant, and does not authorize persons remonstrating to join two or more applicants in the same remonstrance, but a separate remonstrance must be directed against each applicant.

SAME.—*Intoxicating Liquors.*—*Remonstrance.*—*Number of Votes to Constitute a Majority.*—*Statute Construed.*—The majority of voters as provided in section 9 of Act of March 11, 1895 (Acts 1895, p. 248), required to sign a remonstrance against the granting of a license to sell intoxicating liquors is determined by the aggregate vote cast in the township for candidates for the highest office at the No-.

vember election last preceding the filing of the remonstrance, where an application is made to conduct a saloon at some place in the township outside of the limits of an incorporated city; but when the applicant desires to obtain a license to operate a saloon in a ward of an incorporated city, then the majority of voters is determined by aggregating the vote of that particular ward as cast at the last general city election preceding the filing of the remonstrance, for the highest municipal office to be filled at such election.

SAME.—*Intoxicating Liquors.—Remonstrance.—"Highest Office."—Statute Construed.*—The phrase "candidates for the highest office at the last election" as used in section 9 of Act of March 11, 1895 (Acts 1895, p. 248), was intended by the legislature to mean the Governor, if a Governor was elected at the last State election preceding the filing of the remonstrance provided for in said section, if the applicant desired to obtain a license to sell in a township beyond the limits of an incorporated city; in the event a Governor was not elected at said election, then the votes cast for Secretary of State should be the standard. When the application is for a license to conduct a saloon in an incorporated city, a majority of the legal voters of the ward must be determined by the aggregate vote cast therein for mayor at the last preceding city election and in the event no mayor was elected at said election, then the majority must be determined in like manner by the vote cast in the ward for councilman.

STATUTORY CONSTRUCTION.—Where there is nothing in an act to indicate that a word or phrase is used in a particular or technical sense it will be interpreted in accordance with its ordinary and popular meaning at the time of the passage of the statute.

From the Gibson Circuit Court. *Reversed.*

*L. C. Embree,* for appellant.

*M. W. Fields* and *T. R. Paxton,* for appellees.

JORDAN, J.—Appellant was an applicant, at the regular March session, 1896, of the board of commissioners of the county of Gibson, for a license to sell intoxicating liquors in the Second ward in the city of Princeton, in said county.

A remonstrance in writing, under section 9 of an act of the legislature, approved March 11, 1895 (Acts 1895, p. 248), purporting to be signed by a majority of

the legal voters of Patoka township, of said county, was filed with the county auditor, three days before the beginning of said regular session, whereby the remonstrators objected to the granting of a license to any applicant for the sale of spirituous, vinous, malt, or other intoxicating liquors, to be sold and drunk within the limits of said township, and also objected to the granting of such license to five specially mentioned applicants, including appellant. This remonstrance was sustained by the commissioners, and by virtue thereof a license was denied appellant, and upon an appeal and trial the circuit court found that said remonstrance was signed by a majority of the legal voters of said township of Patoka, and by reason thereof rendered a judgment dismissing the application at the cost of appellant. The principal errors assigned relate to the overruling of appellant's motion to strike out the remonstrance and in overruling his motion for a new trial.

The questions which the learned counsel for appellant urge upon us for consideration are:

1st. Is a remonstrance on the part of a majority of the legal voters of a township in which an incorporated city is situated sufficient, under the ninth section of the act in question, to defeat an application for a license to sell intoxicating liquors in a particular ward of said city?

2d. Does this section authorize two or more applicants to be joined and remonstrated against in the same remonstrance?

3d. What must be considered the highest office within the meaning of the last clause of section 9, and what election is meant or intended by said clause?

Section 9 of the act mentioned is as follows:

"If, three days before any regular session of the board of commissioners of any county a remonstrance

in writing, signed by a majority of the legal voters of any township or ward in any city situated in said county shall be filed with the auditor of the county against the granting of a license to any applicant for the sale of spirituous, vinous, malt, or other intoxicating liquors under the law of the State of Indiana, with the privilege of allowing the same to be drunk on the premises where sold within the limits of said township, or city ward it shall be unlawful thereafter for such board of commissioners to grant such license to such applicant therefor during the period of two years from the date of the filing of such remonstrance. If any such license should be granted by said board during said period the same shall be null and void, and the holder thereof shall be liable for any sales of liquors made by him the same as if such sale were made without license. The number to constitute a majority of voters herein referred to shall be determined by the aggregate vote cast in said township or city ward for candidates for the highest office at the last election preceding the filing of such remonstrance."

The language of the section is: "If, etc., a remonstrance in writing, signed by a majority of the legal voters of any township *or ward in any city*, etc., shall be filed, etc., against the granting of a license, etc., to any applicant for the sale of spirituous, etc., liquors * * * with the privilege of allowing the same to be drunk on the premises where sold, within the limits of said township *or city ward*, it shall be unlawful," etc. This section mentions but two districts wherein the will of a majority of the legal voters thereof can defeat the granting of a license, to-wit: 1st. A township, and 2d, a city ward.

Under the act of 1875, an applicant for a license is

VOL. 146—23        •

required to give twenty days notice to the citizens of the township, town, city, or ward in which he desires to sell his liquors, and the privilege is granted to any voter of the township wherein he desires to operate his saloon, to remonstrate for cause against the granting of such license. Burns' R. S. 1894, section 7278 (R. S. 1881, 5314). It is perfectly clear, from the language of section 9, of the act of 1895, when considered in connection with the provisions of section 7278 (5314), *supra*, that when an application is made to obtain a license to sell intoxicating liquors within the bound-. aries of an incorporated city, it must be for the privilege to conduct such business in some particular ward of that city. In such a case, it is only the legal voters residing within that particular city ward that are authorized, under section 9, *supra*, to join in the remonstrance against the granting of the desired license to the particular applicant, and a majority of such voters will defeat the application.

But where the application is made for a license to sell intoxicating liquors at some designated place in a township, but which place is beyond the limits of an incorporated city therein, then the law contemplates and requires that a majority of the legal voters of such township, residing anywhere therein, shall remonstrate in order to defeat such application. It follows then that, in the case at bar, the remonstrance in question should have been confined to the voters of the second ward of the city of Princeton, that being the particular district in which the appellant desired to conduct his saloon, and it was necessary to show that a majority of the voters residing therein had signed the remonstrance, in order to thereby prohibit the board of commissioners in the first instance, or the circuit court upon appeal, from granting a license to the appellant. The general rule is, that where per-

sons exercise a right, under a statute, they must bring themselves within its provisions. The will of the number of voters intended and required by the section of the statute in question must, in each particular instance, be expressed against a license being granted to a particular applicant. There is nothing in the record, in the case at bar, disclosing that any voter of the second ward, of the city of Princeton, joined in the disputed remonstrance, and possibly all of the remonstrators may have been voters residing without the limits of that ward.

In the case of *State* v. *Gerhardt*, 145 Ind. 439, this court said: "We are of the opinion that the remonstrance, provided for by section 9, has application only to some particular applicant, and does not contemplate a general remonstrance, but one directed against each individual who desires to secure a license." We still adhere to this view of the law, and are of the opinion that under a reasonable construction of the statute, it must be held that it does not authorize persons remonstrating to join two or more applicants in the same remonstrance. From the language of the law we do not think that the legislature intended to authorize what might be termed a "blanket" remonstrance, covering all applicants for a license at the same session of the board of commissioners, but, upon the contrary, intended that there should be a separate remonstrance directed against each applicant. The fact is well recognized that there are persons in every community who are opposed to the traffic in ardent spirits, regardless of any legal restrictions imposed upon the sale thereof, or the required fitness, under the law, of the person desiring to engage in such business; while there are others who entertain views to the contrary, and do not object to a license for the sale of such liquors being granted to an applicant whom they

deem, by reason of his good character, fit to be in-
trusted with such a permit, and who, as they believe,
will conduct his business in accordance with the law.
If the statute can be interpreted to permit the use of
one joint remonstrance, embracing all applicants for a
license, at the same session, including those who
might measure up to the legal standard of fitness,
with those who might fall below it, then this latter
class of voters would be placed at a disadvantage, and
might not be enabled, by joining in the remonstrance,
to truly express their will as to all the applicants
therein mentioned. The procedure of tacking, in a
single remonstrance, one applicant on to another,
might possibly result in doing an injustice both to the
voters and also to the applicants, who were but exer-
cising their legal rights to obtain a license. There is
nothing in the statute to indicate that the legislature
intended that a procedure, which might possibly re-
sult in an injustice, should be pursued.

All "maneuvering," "jockeying," or "log-rolling," in
order to secure voters to sign a remonstrance, or to
prevent them, if they so desire, from signing the same,
ought to be condemned. The evident intention or
policy of the law is, that the voters of the particular
district may be permitted, without restraint or undue
influence, to register their will against a liquor license
being granted to an applicant therefor to sell his
liquors in their midst.

We are next asked to give an interpretation to the
following clause of section 9, namely: "The number of
votes to constitute a majority of voters, herein re-
ferred to, shall be determined by the aggregate vote
cast in said township or city ward for candidates for
the highest office at the last election preceding the
filing of such remonstrance." Appellant raises a num-
ber of inquiries relative to the meaning of this clause,

Massey *v.* Dunlap *et al.*

among which are the following: "Does it mean the last township or city election within the prescribed territory?" and, "What is the 'highest office' within the meaning of the statute?"

It is to be regretted that the legislature did not draft this law in such a manner that its meaning in every particular could not be questioned. All our State, county, and township elections, under existing laws, occur biennially at the same time, namely, on the first Tuesday after the first Monday in November. All city elections, in cities like Princeton, organized under the general laws of the State, are now also held biennially, on the first Tuesday in May. Acts of 1893, p. 50; Burns' R. S. 1894, section 3476. It is clear that where the application is made for a license to conduct a saloon at some place in the township outside of the limits of an incorporated city therein, that the majority of the voters of the township should be determined by the aggregate vote cast therein for candidates for the highest office at the November election last preceding the filing of the remonstrance, and that a majority of that vote must be deemed and held to be within the meaning of the law, a majority of all the legal voters of the township at the time of filing the remonstrance. In the event the applicant desires to obtain a license to operate a saloon in a ward of an incorporated city, whether incorporated and acting under the general laws of the State relating to the incorporation of cities, or otherwise, then the majority of the voters should be determined by aggregating the vote of that particular ward as cast therein at the last general city election preceding the filing of the remonstrance for candidates for the highest municipal office to be filled at said election.

The next inquiry is, what did the legislature mean by the phrase "for the highest office?" One of the

cardinal rules in the construction of statutes is, that
where there is nothing in the act itself to indicate that
a word, or phrase, is used in a particular, or technical,
sense, it is to be taken or accepted in its ordinary and
popular meaning.   The word, or phrase, is to be inter-
preted in accordance with its meaning at the time of
the passage of the statute.    Am. and Eng. Ency. of
Law, Vol. 23, pp. 326 and 327.    This rule is recognized
by the act of the general assembly of this State, relat-
ing to the construction of statutes, and it is only when
it will manifestly result in the defeat of the legislative
intent that the words of the statute will not be con-
strued in their plain, ordinary and usual sense.   Burns'
R. S. 1894, section 240 (R. S. 1881, 240); *City of Evans-
ville* v. *Summers*, 108 Ind. 189.

The adjective "high" is used in various senses, fre-
quently meaning prominent.   It was employed by the
legislature in the section in controversy in the super-
lative degree, thereby meaning, in a popular or polit-
ical sense, we think, the most prominent office upon
the election ballot at the last preceding election.

Counsel for appellant say: "At the last State elec-
tion, held in November, 1894, no Governor was elected,
but three constitutional administrative officers,
namely: Secretary of State, Auditor, and Treasurer,
were elected, and also two judges of the Supreme
Court.   Is the Secretary of State a higher office than
judge of the Supreme Court?"   The Governor is the
highest executive officer of the State, and the judges
of the Supreme Court are the highest judicial officers.
The former standing at the head of one of the co-ordi-
nate branches of the State government, and the latter
at the head of another.   Therefore, in a legal sense, it
may be properly said, that the former and latter are of
equal official rank.   But the Governor has always been
understood to be the highest officer chosen by the

electors at a State election. Prior to our present election law, by a common custom and usage in the arrangement of the election ballots, the candidate for Governor of each political party was given the most prominence on the ticket, his name being placed at the head of the list of candidates for the several State offices. Under the existing law this prominence is recognized and directed to be followed in the arrangement of the plan of the official ballot. Acts of 1889, p. 170. The office of Secretary of State is considered as the most prominent administrative office, and its incumbent is chosen at each biennial election. The Secretary of State is required by law to attest all the official acts and proceedings of the Governor and affix the seal of the State to such attestation. R. S. 1881, section 5591 (7614, Burns' R. S. 1894). He may, therefore, be considered, and is more closely connected with the executive than any other of the State's administrative officers. In the event a Governor was not to be elected at the election next ensuing (which event occurs once in every four years), the office of Secretary of State, by common usage and custom, in like manner as that of Governor, has headed the list of State officers to be filled at that election, and has been understood and accepted in accordance with the popular or political idea as the highest office upon the list. Tested, therefore, by the rule of construction to which we have referred, we are of the opinion that the phrase in question must be interpreted as understood by the people in general, in the light of their usages and customs, some of which we have mentioned, and that the legislature thereby meant and intended that if a Governor had been elected at the last State election preceding the filing of the remonstrance, against an applicant who desired to obtain a license to sell in a township at a point beyond the limits of a city therein, the ma-

jority of the voters of that township should be determined by the whole number of votes cast by the electors of that township for the candidates for Governor at said last preceding election. In the event a Governor had not been elected, at said election, then it was intended that the aggregate vote cast in said township at said election for candidates for Secretary of State should be the standard by which the majority of the voters therein must be ascertained. As the judges of the Supreme Court are each elected for a term of six years, it would be possible for two successive elections to pass without the election of any member of that court; it is therefore evident, we think, that this office would not serve the purpose intended and is not within the meaning contemplated by the statute.

The mayor of a city is properly considered the highest official thereof; standing as he does at the head of the executive department of the municipal government, and that of councilman may be considered next in rank. It would follow, therefore, that where the application is for a license to sell intoxicating liquors in a ward of an incorporated city, a majority of the legal voters of the ward must be determined by the aggregate vote cast by the electors thereof for the candidates for mayor at the last preceding city election, and in the event no mayor was elected at said election, then the majority must be determined, in like manner, by the vote cast in the ward for candidates for councilman.

From the conclusions reached the contentions of appellant as to the errors alleged must be sustained.

The judgment is reversed at the cost of appellees, and the cause remanded, with instructions to the lower court to grant a new trial and sustain appellant's motion to strike out the remonstrance.