## White et al. *v.* Furgeson.

[No. 4,066.    Filed May 23, 1902.]

Intoxicating Liquors.—*License.—Remonstrance.—Power of Attorney.* —A legal voter authorized by §7283i Burns 1901 to remonstrate against the issuing of a license to any applicant to sell intoxicating liquors at retail may exercise that right through an agent by a properly executed power of attorney. *pp. 145–159.*

INTOXICATING LIQUORS.—*License.*—*Remonstrance.*—*Power of Attorney.* —A power of attorney to remonstrate against the granting of a license to "any applicant" for the sale of intoxicating liquors is not invalid as delegating a discretion to the agent, as the authority conferred is unqualified, and applies to any and all applicants whomsoever. *pp. 151, 152.*

From Jackson Circuit Court; *Ralph Applewhite*, Special Judge.

George H. Furgeson made application for a license to sell intoxicating liquors to which a remonstrance was filed. The board refused the license and the applicant appealed. From a judgment reversing the order, E. T. White and others, remonstrants, appeal. *Reversed.*

*D. A. Kochenour*, for appellants.

WILEY, J.—This cause was transferred from the Supreme Court. Appellee applied to the board of commissioners of Jackson county for a license to sell intoxicating liquors at retail, under the provisions of the act of 1895, Acts 1895, p. 248. Notice of his intention to apply for license was given, and the application was made to the July session, 1900, of said board. June 28th and 29th, certain remonstrances against the granting of such license were filed in the auditor's office. Upon these remonstrances the board of commissioners refused the license and dismissed the application. From this action of the board, appellee appealed to the court below. Upon appeal, appellee, over the objection and exception of the remonstrators, was permitted to amend his application by inserting therein the words, "on the first floor." With the insertion of these words, the description of the room where the liquors were to be sold was as follows: "In the front room on the first floor of the story and a half frame building situated on" a certain lot (describing it).

In the circuit court demurrers were addressed to the application and remonstrances and overruled. Appellants also moved the court to strike out the amendment which

appellee was permitted to make to his application. The cause was submitted to the court for trial, resulting in a general finding for appellee that he was entitled to have issued to him a license as prayed for in his application. Appellants moved for a new trial. Their motion was overruled, and judgment pronounced on the finding.

All the rulings adverse to appellants, to which reference has been made, are assigned as errors, but the real question presented by the record may be considered and decided under questions presented by the motion for a new trial.

There were 263 names signed to the remonstrance, and it was admitted upon the trial that those whose names appeared thereon were a majority of the legal voters of the township in which appellee was seeking a license to sell intoxicating liquors, and that the remonstrance was timely filed. Of these 263 remonstrators, thirty-six signed the remonstrance in person, and the remaining 227 signed by their attorneys in fact. The trial court held the remonstrances filed by the attorneys in fact were inoperative, and refused to admit them in evidence. While the remonstrance may be considered as a whole, it was in fact filed in two parts, by two separate attorneys in fact.

We are confronted with this naked and important proposition: Can legal voters, who are authorized to remonstrate against the issuing of a license to any applicant to sell intoxicating liquors at retail, delegate that authority to another, by regularly constituting him their agent, by executing to him a power of attorney? An answer to this inquiry must be decisive of any debatable question presented by the record, and settle a question in which the public in general is interested.

This is the first time that a question of this exact character has reached a court of last resort in this State. We have, therefore, no "ancient landmarks of the law" to guide us, and must reach a conclusion as one of first impression. So much of §9 of the act of 1895 as is pertinent to the

White *v.* Furgeson.

right of a legal voter to remonstrate is as follows: "If, three days before any regular session of the board of commissioners of any county a remonstrance in writing, signed by a majority of the legal voters of any township or ward in any city situated in said county shall be filed with the auditor of the county against the granting of a license to any applicant for the sale of spirituous, vinous, malt or other intoxicating liquors under the law of the State of Indiana, with the privilege of allowing the same to be drunk on the premises where sold within the limits of said township, or city ward it shall be lawful thereafter for such board of commissioners to grant such license to such applicant therefor during the period of two years from the date of the filing of such remonstrance." §7283i Burns 1901.

It is quite clear that this statute gives the right to any legal voter in the township or ward where the applicant desires to sell, to remonstrate against the granting of a license to "any applicant." No ground or reason for remonstrating is required. It is a simple right conferred upon the legal voter by the legislature, in restraint of the liquor traffic, and such right of remonstrance has nothing whatever to do with the fitness of the applicant. If a majority of the legal voters remonstrate it becomes a prohibition to granting a license. By this provision of the statute the legislature did not intend to enlarge the right of local self-government, but to put it in the power of the majority to exercise such right, which is an inherent right under the Constitution, and in popular government.

The statute having given to the legal voter this right, can he delegate such right to another by a properly executed power of attorney? This depends, to some extent, at least, upon the instrument delegating the power. The several powers of attorney, as shown by the record in this case, are identical, except as to names, and that their full purport may appear, we append a copy of one, as follows: "Power of attorney. Know all men by these presents that the un-

dersigned being each and severally a legal voter of Owen township, in Jackson county, State of Indiana, does, each for himself, severally, hereby nominate, constitute, and appoint Isaac Fish, who is a resident and legal voter of said township, his true and lawful attorney in fact, for him, and in his name, place, and stead, to execute, sign, and place on file with the auditor of said county his remonstrance in writing against the granting of a license to any applicant, by name, for the sale of spirituous, vinous, malt, or other intoxicating liquors under the laws of the State of Indiana, with the privilege of allowing the same to be drunk on the premises where sold, within the limits of said township; and in like manner to execute and file such remonstrance against any one, by name, who shall give notice as required by law of his intention to apply for such license as aforesaid within said township. And the undersigned, each and severally, hereby authorize and empower said Isaac Fish to execute as aforesaid a general remonstrance for him as aforesaid, and as provided in section 9 of an act of the General Assembly of the State of Indiana approved March 11, 1895 (Acts 1895, p. 251), against any person whomsoever who may give notice as required by law of his intention to apply for license as aforesaid to sell intoxicating liquors as aforesaid at any point whatever in the limits of said township, and successively against each of such applicants, by name who may give notice as aforesaid. And the undersigned, each for himself, and severally, hereby doth ratify and confirm each and every act which his said attorney shall lawfully do as herein authorized, binding himself hereby in as full and ample a manner as he himself could do were he personally present and did the same; reserving always the power of revocation within the limits of the statute aforesaid. In testimony whereof, the undersigned, each for himself, has set his hand and seal this 27th day of Dec., 1899." Of the three powers of attorney, the first was executed December 27, 1899; the second and third, January 30, 1900.

It must be conceded that there is no statutory authority giving the right to a legal voter to delegate to another, by letter of attorney, the right to sign his name to a remonstrance.   If the right exists at all, it must rest upon the inherent right of one person to appoint or constitute another his agent to do a particular thing.   Much of the business of the world is transacted by agents, or through agencies, representing their principals.   It is a rule, recognized by all the authorities, that the acts of the agent, within the scope of his employment, are the acts of his principal, and the latter is bound by them.   In the case we are now considering, all persons whose names appear on the remonstrance had the right, under the statute, to remonstrate against the application of appellee to sell intoxicating liquors in the township where they resided.   Instead of exercising that right in person, they elected to confer upon others the power to represent them, and sign the remonstrance in their names.   The language of the powers of attorney is so plain that it needs no construction.   It is manifest that the persons executing them intended to confer upon their respective attorneys in fact the continuing authority, until that authority should be revoked, to remonstrate, in their names, against the granting of a license to "any applicant" who might apply for such license under the statute.

The attorneys in fact are not given any authority to discriminate in favor of or against any applicant.   A general power is granted simply to remonstrate against any applicant, and each successive applicant.   It might be well, in this connection, to inquire as to the character and nature of a power of attorney, and it may be defined as: "A power or letter of attorney is the instrument by which the authority of one person to act in the place and stead of another as attorney in fact is set forth."   18 Am. & Eng. Ency. of Law, 871; *Hunt* v. *Rousmanier,* 8 Wheat. 174, 5 L. Ed. 589; *Porter* v. *Hermann,* 8 Cal. 619.   In the latter case it

was held that all attorneys in fact are agents, and that by "attorneys in fact" are meant persons who are acting under a special power created by deed. So we see that it is, as above suggested, largely a question of agency.

The rules governing the construction of written instruments generally are resorted to in construing powers of attorney. 18 Am. & Eng. Ency. of Law, 871. The obvious meaning of terms used is not to be restricted or extended by implication in the absence of necessity. *Wood* v. *Goodridge,* 6 Cush. 117, 52 Am. Dec. 771; *Johnston* v. *Wright,* 6 Cal. 373; *Davidson* v. *Dallas,* 8 Cal. 227; *Blum* v. *Robertson,* 24 Cal. 128; *Wright* v. *Ellison,* 1 Wall. 16, 17 L. Ed. 555; *Very* v. *Levy,* 13 How. 345, 14 L. Ed. 173.

Another well supported rule relating to powers of attorney is that the intention of the parties, as ascertained by the language used, governs. *Peckham* v. *Lyon,* 4 McLean 45; *Hartford Fire Ins. Co.* v. *Wilcox,* 57 Ill. 180; *Gould* v. *Bowen,* 26 Iowa 77.

In *Lamy* v. *Burr,* 36 Mo. 85, 88 Am. Dec. 135, it was held that the intention of the party giving the power should in all cases govern the construction to be given to and determine the extent of the authority.

In *Hemstreet* v. *Burdick,* 90 Ill. 444, it was held that where the intention fairly appears from the language employed, that intention must control.

By the powers of attorney in this case, each of the persons executing it nominated, constituted, and appointed a designated resident and legal voter of the township where he resided, his attorney in fact, to do what? To act "for him and in his name, place, and stead, to execute, sign, and place on file * * * his remonstrance in writing against the granting of a license to any applicant, by name, for the sale of spirituous, vinous, malt, or other intoxicating liquors * * * within the limits of said township, and in like manner to execute and file such remonstrances against any one, by name, who shall give notice as required by law, of

White *v.* Furgeson.

his intention to apply for such license, * * * within said township, and successively against each of such applicants by name who may give notice," etc.

From this language there can be no doubt as to what the parties intended by appointing an attorney in fact to exercise a right or privilege which the statute conferred upon them. That right was a continuing one, and as long as they remained legal voters of the township they could exercise such right. The language is too plain for construction. The phrase "any applicant," used in the first instance, is emphasized and made plain by the latter expression, "and successively against each of such applicants," etc. Instead of exercising such right in person, they elected to delegate such right to their attorneys in fact, and conferred upon them the continuing right to remonstrate, in their stead and names, against any applicant, "and each successive applicant," until such power should be revoked.

Under the terms of these instruments there was no election conferred upon the attorneys in fact, in the exercise by them of their own judgment and wishes in the premises. They had no right to elect to file a remonstrance against one applicant, and refuse to file against another; but it was their duty, under the express provisions of the instruments conferring their power, to file remonstrances against any and all who might apply for license. By acceptance of the powers of attorney, each of the agents, thus constituted, accepted the duty they imposed upon them, and impliedly engaged to perform that duty.

It is important to consider the sense of the word "any" as here used. Being indeterminate in application, it is unquestionably used in the plural, and, as used, means every applicant who may apply. The lexicographers say that the word is often used in the plural as a pronoun, meaning the person or thing understood, as anybody, any one, or any person. Webster Dict.; Century Dict. In the case of *Dubuque County* v. *Dubuque, etc., R. Co.,* 4 G. Greene

(Iowa) 1, it was held that the word "any" extends to an indefinite number. In *McComas* v. *Amos,* 29 Md. 120, 141, it was held that the word "any" might mean every. In *Davidson* v. *Dallas,* 8 Cal. 239, it was held that the expression, "For the foregoing purposes or any of them," meant in effect "for the foregoing purposes and every of them."

The legislature of Arkansas passed an act authorizing any county in the state to subscribe to any railroad in the state and to issue its bonds therefor. In the case of the *County of Chicot* v. *Lewis,* 103 U. S. 164, 26 L. Ed. 495, it was held that the power given was a power to subscribe to any railroad, and that it included all railroads in the state without restriction.

We are led to the conclusion from the foregoing authorities, and by sound reasoning, that the word "any", as used in the powers of attorney, must be construed to mean every one, or every person, who might apply for a license. No discretion is delegated to the agents, and the authority conferred upon them is unqualified, and applies to any and all applicants whomsoever.

It may be stated as a rule of common law that whenever a person has a power, or in his own right, to do a thing, he may do it by an agent. Story on Agency, §6; Ewell's Evans on Agency, 12. This means, of course, the transferring of such power or right to another. Ewell's Evans on Agency, *supra.*

In the chapter on "The Doctrine of Delegation", Ewell's Evans on Agency, 48, the reason of the limitation implied in the words "in their own right", is discussed. It is there said: "Where, then, the authority is original, and not derivative, the exceptions to the rule allowing full power of delegation, may be ranged under two heads. There can be no delegation of the performance: (1) Of an illegal act; (2) of an act of a personal nature." In all other instances, where persons possess a power or right, the same may be delegated.

White *v.* Furgeson.

In 1 Wait's Actions and Defenses, 213, it is said: "Every person of full age, who is not under some legal disability, is invested by the law with a general authority to dispose of his own property, to enter into contracts, and to perform acts which relate to or concern his personal rights, interests, duties, and obligations. The law does not, as a general rule, require a party to act in proper person; he may do most acts by the aid of other persons, to whom he may choose to delegate his authority, either generally or specially for that purpose." Here we have a standard authority upon the proposition that a person may delegate the performance of his personal interests, duties, rights, and obligations to another.

The right of a legal voter to remonstrate against the application of any person for a license to sell intoxicating liquors in the township or ward where he resides, is, as we have seen, a personal right conferred upon him by statute. Without the statute he would have no such right, and, under the doctrine of delegation, it seems within both the reason and the spirit of the authorities and the law that he can transmit or confer upon another the power to act for him in his stead.

It has been held by the Supreme Court of this State, under the liquor law of 1875, that the right of persons who were qualified to remonstrate under that act, could be exercised through the agency of a duly authorized attorney. In that case the remonstrators did not delegate their right to remonstrate upon their attorney by executing to him a power of attorney, but he merely appeared for them before the board of commissioners, prepared the remonstrance, and signed their names to it, "by William L. Rabourn, attorney for remonstrators." *Castle* v. *Bell,* 145 Ind. 8.

Under the ruling in that case, suppose those same remonstrators had given to Rabourn a general employment or authority to appear for them as their attorney in any and all applications where they would have been legal remonstra-

tors, and file for them remonstrances, could it be successfully asserted that he would not have had full and ample authority to have represented them in any such case, and exercised their rights to the same extent and effect as if they had appeared in person? Certainly not. Then if this could have been done, we can see no good reason why persons who have a right to remonstrate, under the act of 1895, can not delegate that right to another, under the solemnity and form of a duly executed power of attorney, to remonstrate against any and all applicants. That is exactly what was done here.

This case is before us without a brief in behalf of the appellee, but the record shows upon what grounds the trial court excluded the powers of attorney when offered in evidence, and that is that they did not specifically authorize the attorneys in fact, designated therein, to sign a remonstrance against the appellee. This position is untenable. The powers of attorney authorized and directed the attorneys in fact to remonstrate, in the name, place, and stead of each of the parties executing them, against any applicant who might apply for a license within the township, and each successive applicant who might give notice, etc. Under the authorities we have cited, and in sound reason, the word "any" embraced any one who might apply. While the powers of attorney did not specifically name the appellee, they were effective against him, because he was included within their clear intent and meaning. Appellant was one of any applicant or every applicant. The remonstrance was, in fact, directed against him by name, and this brings it within the rule announced in *State* v. *Gerhardt,* 145 Ind. 439, 33 L. R. A. 313, and *Massey* v. *Dunlap,* 146 Ind. 350.

A cardinal rule in the construction of a statute is that where there is nothing in the act to indicate that a word or phrase is used in a particular or technical sense, it is to be taken or accepted in its ordinary and popular meaning. The word or phrase is to be interpreted in accordance with its

meaning at the time of the passage of the statute.   23 Am.
& Eng. Ency. of Law, 326, 327.   This rule is recognized
by an act of the legislature of this State, and it is only
when it will manifestly result in the defeat of the legislative
intent that the words of a statute will not be construed in
their plain, ordinary, and usual sense.   §240 Burns 1901.
See, also, *Massey* v. *Dunlap,* 146 Ind. 350.

In construing §9 of the act of 1895, conferring the
right upon a legal voter to remonstrate against an appli-
cant for license, we have given to the word "any", as there
used, its ordinary, plain, and usual meaning.   By an analy-
sis of the statute it is made manifest that the phrase "any
applicant" means every applicant.   To defeat an appli-
cation for license it required a majority of the legal voters
of "any township," "or ward in any city" to remonstrate.
Now it is perfectly clear that when the legislature used the
phrases "any township," and "or ward in any city," it
meant every township in the State, and every ward in every
city in the State.   The right to remonstrate is given to all
legal voters, and hence includes every legal voter.   By the
same construction we can say that by the phrase "any ap-
plicant" is meant every applicant.   If A employs B as his
attorney, to appear for and represent him in any court in
any litigation he may have, the authority of B so to appear
and represent A in all litigation against him would be un-
questioned; and this would be true upon a verbal employ-
ment.   Again, if A, by a duly executed power of attorney,
appoints and constitutes B his attorney in fact to sell and
convey by deed any of his real estate, wheresoever situated,
the power of B to sell and convey all of A's real estate,
while such power of attorney was in force, unrevoked, must
be conceded.

The same principle, it seems to us, must be applied here,
under the authority of the legal voters, conferring upon their
respective attorneys in fact the authority to exercise their
rights by executing, signing, and placing on file, with the

auditor, their remonstrance in writing against the granting of a license to "any applicant, by name," and in like manner "to execute and file such remonstrance against any one, by name, who shall give notice," and "successively against each of such applicants," etc.

This conclusion is not in any manner in conflict with the rule declared in *Cochell* v. *Reynolds,* 156 Ind. 14. In that case a remonstrance was filed by an agent, under a power of attorney, which contained this provision: He, the agent, "is hereby authorized to sign our names to any remonstrance against the granting of a license to any person he [the attorney in fact] may see fit to remonstrate against receiving or having any such license, and to file such remonstrance in the office of the auditor  *  *  *  at any time he may see fit and present the same to the board of commissioners  *  *  *,  and all such power and authority is hereby granted to our said attorney in fact so to do at any time within two years from the date hereof." In that case, under the clause of the power of attorney quoted, it was held that the right or power conferred upon the legal voters of a township or ward of a city, under §9 of the act of 1895, to remonstrate, could not be delegated by such voters to some special agent in such manner as the exercise of such power would be made to depend upon the mere discretion of the agent. The decision in that case was unquestionably right.

In *Massey* v. *Dunlap,* 146 Ind. 350, and *State* v. *Gerhardt,* 145 Ind. 439, it was decided that by §9 of the act of 1895, there was created a species of self-government which by the law is placed in the hands of the people to be exercised by a majority of them as they may judge to be for their best interest.

The regulation and restraint of the liquor traffic is an exercise of the police power of the State. Such power as an original and primary power is lodged in the legislature, but the legislature, by §9 of the act of 1895, delegated a

portion of such power to the majority of legal voters in every township in the State, and every ward in every city of the State. *Cochell* v. *Reynolds*, 156 Ind. 14.

As was said in *Cochell* v. *Reynolds, supra:* "To each voter is committed the right to decide whether or not he will oppose any or all applications. He may be hostile to the commerce and determine that he will resist every application. He may favor a well regulated traffic and conclude to thwart only those applicants he deems unfit. As to the voter, the right is delegated, and not primary. A delegated right can not lawfully be redelegated in the absence of express authority to that end from the principal. The act of 1895 does not give the voter, in respect to the decision to be made by him, the right of substitution. In this case the voters professed to authorize an agent to sign the voters' names to remonstrances in such cases as the agent should see fit. The decision was not the voters', but the agent's, multiplied in power by the number of signatures to the remonstrance. * * * The effectiveness of an instrument by which the voters should determine for themselves the matter of discretion and employ an attorney at law or one of their own number to appear in one or all of these judicial proceedings, and prepare, sign, and file a remonstrance in each case, and by which instrument the attorney accepted the employment and agreed to act upon the expressed decision of the voters, is not directly involved in this appeal." In a concurring opinion by Jordan, J., he said: "I am not to be understood as impliedly, or otherwise, affirming that the legal voters of a township, or ward, as the case may be, can not under any circumstances be permitted to remonstrate, under §9, *supra,* through the agency of another."

It seems from the language used, that there is no doubt what conclusion would have been reached by the Supreme Court if such question had been directly involved. The sentiment in regard to the sale and traffic of intoxicating liquors, as upon most questions which affect the public, is

divided. Some citizens have convictions that there should be no restrictions, and that it is a business which any person who may desire should be allowed to follow without restraint. Others look upon the business as legitimate, within restricted limits, and as thus restricted, countenance the traffic. While others are opposed to it in any form, with or without restrictions.

With the latter, we must class under the terms of the remonstrance and powers of attorney as disclosed by the record, the majority of the voters of Owen township, Jackson county, Indiana. By their powers of attorney they have determined for themselves the matter of discretion, and employed and empowered their attorneys in fact to appear in any and all applications, and remonstrate against any and each applicant, by name, who might apply for a license. The majority of the legal voters in that township determined for themselves that they did not desire that any one should be granted a license, and thus be permitted to sell intoxicating liquors within its borders. They thus exercised the right to a "species of local self-government, which by law is placed in the hands of the people to be exercised by a majority of them as they may judge to be for their best interest." This right the law ought to respect, when it is properly exercised, for it is the voice of the majority, and to say that the majority shall not rule would be destructive of the fundamental doctrine or principle of popular government.

It is affirmed by the authorities in this State that the hearing of an application for a liquor license is a judicial proceeding, that the application is in the nature of a complaint, and that the remonstrance is in the nature of an answer. It is also ruled that, under §973 Burns 1901, authorizing civil actions to be prosecuted or defended by a party in person or by attorney, a remonstrance signed by the remonstrators' attorney is a sufficient compliance with §7278 Burns 1901, where the remonstrance is required

to be for cause. See *Cochell* v. *Reynolds,* 156 Ind. 14, and authorities there cited. Also that under §9 of the act of 1895, a remonstrance states facts sufficient to constitute a defense to the application if it alleges the opposition of the remonstrators to the granting of the license.

Under these authorities, and upon the foregoing reasoning, we are clearly of the opinion that the appellants, as remonstrators, had a right to appear by their attorneys in fact and file their remonstrance. This being true, the names signed to the remonstrance by the attorneys in fact, under the respective powers of attorney, should have been counted. When counted, they, with those who had individually signed the remonstrance, would have constituted a majority of the legal voters of the township. Under such facts, both the board of commissioners and the circuit court on appeal, were without jurisdiction, and the application of appellee should have been dismissed.

Judgment reversed, and the court below is directed to grant appellants a new trial, and to proceed in harmony with this opinion.