POE v. STATE OF INDIANA.

[No. 23,851.   Filed March 30, 1921.]

1. STATUTES.—*Construction.*—*Statutory Rules.*—*Words Given Ordinary and Usual Sense.*—Under §240 Burns 1914, §240 R. S. 1881, the courts will construe the words of statutes in their plain, ordinary and usual sense, unless to do so would thwart the evident intent of the legislature.   p. 360.

2. INTOXICATING LIQUORS.—*Unlawful Possession of Intoxicating Liquors Received from Carrier.*—*Statute.*—*Construction.*—One purchasing intoxicating liquors from the driver of a truck in which the liquor had been concealed and transported to the place of sale for the driver's brother, the owner of the liquor, may be convicted of unlawfully receiving intoxicating liquors from a carrier in violation of §15 of the Prohibition Act (Acts 1917 p. 15, §8356a *et seq.* Burns' Supp. 1918), making it an offense to possess intoxicating liquors received directly or indirectly from a common or "other carrier."   p. 361.

From Marion Criminal Court (50,348) ; *James A. Collins,* Judge.

Prosecution by the State of Indiana against William M. Poe. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Robbins & Weyl,* for appellant.

*U. S. Lesh,* Attorney-General, and *A. G. Cavins,* for the State.

TRAVIS, J.—This was a prosecution for alleged violation of §15 of the act, known as the "Prohibition Law," Acts 1917 p. 15, §8356a *et seq.* Burns' Supp. 1918, instituted in city court of the city of Indianapolis; appealed by defendant to the criminal court of Marion county from a judgment against him and then tried upon a plea of "not guilty" before the court, without the intervention of a jury, which resulted in a finding of guilty, and judgment imposing a fine, from which judgment the defendant appeals to this court.

The defendant, a merchant in and resident of the city of Indianapolis, accompanied by his wife, made a trip in his coupe automobile to the city of Terre Haute, ostensibly to visit a friend, who was engaged in the bakery business. Upon arrival at the bakery in Terre Haute, after having left his wife at a hotel, the defendant was told that the man he asked to see had gone to another city. In leaving the bakery, the defendant left by way of a shed, to get to his automobile, and found "some of the boys out there," one of whom was showing a quart of whisky, who, in reply to defendant's inquiry "where he got it," replied "at West Terre Haute right across the bridge"; and who, in reply to defendant's question, "any chance of me getting one," said he thought so, and that it was in a truck, "whisky in the bottom with straw and bananas on top." Without delay, the defendant drove over and found the fellow and the truck, and he immediately engaged in conversation with the man with the truck, and asked him if he could

get a quart of whisky. A negative answer from the truckman resulted into such intimacy between them that the truckman confided to him that he had whisky under the bananas, and the price was $10 per quart, but that he had left six or seven cases, and was "going to clean it up * * * at a bargain." A bargain resulted in the Indianapolis merchant taking the job lot of seventy-two quarts for $420, and the whisky was transferred from under the bananas into the automobile, into "a place in the back where I could carry things," where it was locked in by a spring lock, with the key at a public garage in Indianapolis. The truckman "said his brother had owned a saloon, and they had bottled the whisky * * * and decided they wanted to sell it." The defendant was arrested three miles west of Indianapolis with the whisky in his possession. This is a statement of the material facts in the case.

In the court below, defendant filed his motion for a new trial, specifying as causes therefor: (1) The finding and decision of the court are not sustained by sufficient evidence; and (2) the finding and decision of the court are contrary to law.

The appellant sets out three errors in his assignment of errors, of which the first, that the trial court erred in overruling the motion for a new trial, will be considered, the second and third errors assigned being improper.

There is no conflict in the evidence. Appellant says in his brief that he bought and received from a "bootlegger" by the roadside the seventy-two quarts of whisky.

The serious part of this appeal hinges upon the construction of the words "other carrier" in §15 of the statute, supra, upon which the prosecution is based, which section is as follows:

"Sec. 15. After the second day of April, 1918,

it shall be unlawful for any person in this state to receive directly or indirectly intoxicating liquors from a common or other carrier or for any person in this state to possess intoxicating liquors, received directly or indirectly from a common or other carrier in the state, except that such liquors have been received from such common carrier by a person holding a permit to receive intoxicating liquors, excepting also to clergymen using wine for sacramental purposes as provided for in this act." (§8356o Burns' Supp. 1918.)

The charge upon which appellant was found guilty is count 5 of the affidavit, which is as follows: "COUNT 5. And affiant aforesaid upon his oath aforesaid says that Wm. M. Poe, on Oct. 10, 1919, at and in the city and county aforesaid, did then and there unlawfully receive intoxicating liquors, to-wit: Whisky, gin, wine, beer and * * * from a carrier and did then and there unlawfully possess intoxicating liquors to-wit, Whisky, gin, wine, beer and * * * received from a carrier in this State; contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Indiana."

Section 15, supra, names two offenses, and said count 5 of the affidavit, which charges the crime, charges two offenses, the latter of which, that appellant did "unlawfully possess intoxicating liquors, to-wit: Whisky, gin, wine, beer and received from a carrier in this state," is the only one referred to in the briefs.

Appellant insists that, because the words "common carrier" used in said statute have a well-defined and settled meaning in law, the words in connection therewith, "other carrier," following the specific words of a like nature, take their meaning from the former, and for that reason the latter words, "other carrier" are presumed to embrace only persons or things of the kind defined by the words "common carrier." To reach this

conclusion appellant assumes that the words "other car-
rier" are of the same import and equally expressive
and limited as the words "private carrier," which latter
words are analagous to the words "common carrier,"
but have so definite a meaning as to be clearly distin-
guished from "common carrier." See 10 C. J. 38.

Are the words "other carrier" to be construed as to
limit their legal definition to be contained in that of
"private carrier"?

"The construction of all statutes of this state shall
be by the following rules, unless such construction be
plainly repugnant to the intent of the legislature or of
the context of the same statute:

"*First.* Words and phrases shall be taken in their
plain, or ordinary and usual sense. But technical words
and phrases, having a peculiar and appropriate mean-
ing in law, shall be understood according to their
technical import." §240 Burns 1914, §240 R. S. 1881.

Under the above statutory rule, the courts have con-
strued the words of statutes in their plain, ordinary
and usual sense, unless to do so would thwart the
evident intent of the legislature. *Massey* v. *Dun-
lap* (1896), 146 Ind. 350, 358, 44 N. E. 641.
Therefore, to construe the words "other carrier," found
in §15, *supra,* to mean only a "private carrier," defined
as one who undertakes to deliver goods in a particular
case for hire or reward, would open the door to one
who might, as a gratuity, undertake to transport or
carry intoxicating liquors from one person to another,
which the legislature intended to prohibit. But in
*Banks* v. *State* (1919), 188 Ind. 353, 123 N. E. 691, it
was said: "The court is generally required to con-
sider the word in the concrete as used in the statute to
be construed, keeping in mind the general purpose of
the act and the evils it was intended to remedy, as well
as other rules of statutory construction." But we are

not to be understood as holding that the words "other carrier" are to be extended to include one who is carrying his own liquors, for to do so would not be in keeping with the legislative or judicial rules of statutory construction.   The word "carrier" has a well-defined and well-understood meaning, and it is not within the province of the court to say that the legislature used it in any other sense, or intended to give it any other meaning beyond that here indicated.   Consequently, one of the essential elements of proof to sustain a conviction for receiving intoxicating liquors from a common or other carrier, under §15, *supra*, is that such liquors must have been received from a carrier, as defined in this opinion.

The whisky was "carried" by the "bootlegger," to the place "across the bridge" from some place not disclosed by the evidence, for the owner, the "brother who 2. had owned a saloon," or for the owners, "they," the brother and the "bootlegger," or possibly others; but the "bootlegger" was not the sole owner of it, according to the evidence of the appellant, or a fair inference therefrom, and he, the one from whom appellant received directly the whisky, was a carrier other than a strictly "common carrier" or a strictly "private carrier."

Neither is this any other than a strict construction of this a criminal statute; for the words "other carrier" having no peculiar meaning in law, made by the legislature or by the courts, they are held to mean their plain, ordinary and usual sense.

The finding is therefore sustained by sufficient evidence, and the judgment is not contrary to law.

Judgment affirmed.

Townsend, J., absent.