**OLIVE–STERNENBERG LUMBER CO. v. GORDON.**

No. 3708.

Court of Civil Appeals of Texas. Beaumont.

July 11, 1940.

Rehearing Denied Oct. 2, 1940.

R..M. Briggs, of Kountze, and Geo. E. Holland, of Beaumont, for appellant.

James F. Parker, of Kountze, for appellee.

WALKER, Chief Justice.

This was an action in trespass to try title by appellee, W. D. Gordon, against appellant, Olive-Sternenberg Lumber Company, a corporation, to recover an undivided one-fourth interest in the Lawrence and Creecy survey of 640 acres of land in Hardin County, and for damages for the value of the timber cut from the land. Appellant answered by demurrers, pleas of not guilty, estoppel and stale demand, and by special pleas of the statutes of limitations of four, five, and twenty-five years. Judgment was for appellee on an instructed verdict for the interest in the land sued for, but against him for damages for cutting the timber, from which appellant has duly prosecuted its appeal to this court.

Appellee and appellant claim the land through W. H. Watson and W. S. Parker as common source. On the 30th day of November, 1908, Watson and Parker executed to appellee the following instrument:

"State of Texas, County of Hardin. Know All Men By These Presents: That we, W. H. Watson & W. S. Parker, of Hardin Co. Texas, in consideration of the professional services to be performed by W. D. Gordon, of Beaumont, Texas, to be rendered in defending the title to the hereinafter described lands in said county, in a suit styled David L. Gallup vs. W. H. Watson, et al., pending in the U. S. Circuit Court, in & for the Eastern District of Texas, at Beaumont, have granted, sold & conveyed, & by these presents do grant, sell & convey unto the said W. D. Gordon, his heirs & assigns forever, and undivided

interest of 160 acres in & to the survey of 640, more or less, acres patented to Lawrence & Creecy, situated 2 miles · east of Kountze, bounded on north by G. C. & S. F. Ry. Co. East by *Isai* Junker 640 a. sur. South by B. B. B. & C. Sur. & H. G. King, & on west by Richard Jones 640 acre sur. & being the same land in controversy in said suit.

"The said W. D. Gordon agrees to defend the title to said land in said suit & in all other suits which may be instituted by the said David L. Gallup, his heirs & assigns, and a failure on his part shall under this conveyance * * * null and void, & upon a compliance by the said W. D. Gordon with the terms of this contract the said W. H. Watson & W. S. Parker shall & will execute to him a good and sufficient deed to said 160 acres of said land and shall account to him for all timber which shall be hereafter removed by them from said land at the market price of the same, the said W. D. Gordon agreeing to serve them as Atty. as aforesaid until the said litigation now pending by said Gallup shall have been settled, & all other litigation which may arise by or through the said Gallup, his heirs or assigns. Witness our hands this 30 day of Nov. 1908. W. H. Watson W. S. Parker", which was filed for record on the 12th day of November, 1909, and duly recorded on the 13th day of November, 1909, in Vol. 52, page 552 et seq., deed records of Hardin county. After receiving this instrument, appellee proceeded with diligence to discharge the duties of his professional employment. While the Gallup suit was pending on the docket of the court, Watson and Parker, through appellee as their attorney, agreed upon a settlement of the issues in controversy, whereby Watson and Parker were to receive judgment for the land. Conditioned on the consummation of this settlement, Watson and Parker agreed to sell the 640 acres of land to appellant for $7,000, but it was not shown that appellee knew that this proposition of settlement included his interest in the land. To effectuate the settlement with Gallup, appellant paid to Watson and Parker, through appellee, $1,500, which was delivered by appellee to Gallup. After the settlement was effectuated, appellant paid $5,500, the balance of the purchase price, to Watson and Parker. On the 15th day of November, 1909, Watson and Parker conveyed the 640 acres of land to W. J. Brackin, who on the 25th day of November, 1909, conveyed it to appellant. Final judgment was entered in the Gallup suit on the 26th day of November, 1909, awarding Watson and Parker the 640 acres of land. Appellant took title from Watson and Parker, through Brackin, to the 640 acres of land without actual knowledge that appellee held his interest under the instrument copied above, but this instrument was in fact of record at the time it took its conveyance.

The first point presented by the appeal is the nature of the contract executed by Watson and Parker to appellee. It is our conclusion that this instrument was an absolute, present conveyance, in the nature of a deed with vendor's lien reserved, on the consideration of certain legal services to be performed by appellee to the grantors. The agreement on the part of Watson and Parker to convey the land at a subsequent date, when appellee had performed his legal services, was mere surplusage, and modified in no way the granting clause. There is no conflict between the granting clause and the agreement to convey the land when the legal services had been performed—that is—when the consideration had been paid. This language was a mere statement of the legal effect of the granting clause, construed in connection with the consideration as written into the face of the instrument. The instrument was executory in its nature, as is a deed with a reserved vendor's lien, and appellee's title was matured into a legal title by the payment of the consideration—the rendition of the legal services.

But if the instrument is not of the nature of a deed with the vendor's lien reserved, and if the granting clause must yield to the condition binding Watson and Parker to convey the land to appellee on the performance by him of the legal services contemplated by the contract, then the instrument should be construed as being in the nature of a bond for title, with the consideration fully paid by appellee before appellant acquired its adverse title. By rendering the legal services, expressed as the consideration of the contract, appellee paid for his interest in the land as fully as if he had paid a cash consideration. The payment of the consideration expressed in a bond for title ripens it into an equitable title. 14 Tex.Jur. 761; Deeds, § 11. Appellee's equitable title was superior to the legal title conveyed to appellant by the common source through Brackin, and supported his action of trespass to try title against appellant. On this point Judge Brown, speaking for our Supreme Court in

Stafford v. Stafford, 96 Tex. 106, 70 S.W. 75, 76, said: "In Secrest v. Jones [21 Tex. 121] the vendor had given a bond for title to the land in question, and the purchase money had been paid. The vendor refused to convey the land, and the vendee brought an action of trespass to try title, and it was held that upon the payment of the purchase money the title became absolute in the vendee. There can be no question that the equitable title to this land was in B. F. Stafford under the allegation of his petition, and he could maintain such action for the recovery of the land as might have been maintained if he had the complete legal and equitable title. The fact that he set out the facts which constituted his cause of action does not change the character of the suit; it is as much an action for the recovery of real estate as if it had been in the form of trespass to try title."

Against our construction of the instrument in issue, appellant contends that it conveyed to Mr. Gordon a mere equity in the land and not a present title. In support of this contention, it cites Dull v. Blum, 68 Tex. 299, 4 S.W. 489; Hazlett v. Harwood, 80 Tex. 508, 16 S.W. 310; Tayler v. Taul, 88 Tex. 665, 32 S.W. 866, 867, and Browne v. King, 111 Tex. 330, 235 S.W. 522, 523, all by the Supreme Court. These cases are not in point. Construing the first two cases, in Tayler v. Taul [88 Tex. 665, 32 S.W. 867] the Supreme Court said that the application of each of the instruments in controversy "to any particular land depended, not upon the construction of the instrument by the court, but upon some future action by the grantee under and in pursuance of the same, bringing the lands within its terms. The necessity of this future action was sufficient to render the contracts executory." The "application of the instrument" in issue to the very land in controversy did not require "some future action" by Mr. Gordon, but by its very terms the instrument conveyed the land—this very land—to him. After giving the language of conveyance in the instrument in controversy in Tayler v. Taul, the court said, in construing it, on authority of the two first cases cited above: "A proper construction of the instrument requires us to give effect to both of said words, and this limits the agent's rights to such of those lands as may have been by him subjected to his agency after the execution of such instrument. This brings the instrument within the principle of the two cases

above cited, and determines it to be an executory contract."

It requires no analysis to distinguish the instrument now before us from the instrument in controversy in Tayler v. Taul. The following quotation from Browne v. King clearly distinguishes the instrument in controversy therein from the instrument now before us [111 Tex. 330, 235 S.W. 523]: "The instrument executed by the Acebos and given Browne was not effective on delivery as a deed to one-half of the land. It conveyed no present interest. His interest was to be a future one. It was to be in the land when 'recovered,' and then only in consideration of the performance of his part of the contract. Except upon such performance he was to have no interest. Further action on his part was necessary—his recovery of the land for the grantors by the prosecution of a successful suit or amicable partition. There was no grant to him of an interest in the land under its existing status. The grant was an interest in the land 'so recovered,' revealing very plainly that his interest was to be effective only after the successful exercise of his agency. The necessity for future action on Browne's part as the condition for the vestiture of any interest in his favor made the contract purely executory. Hazlett v. Harwood, 80 Tex. 508, 16 S.W. 310; Tayler v. Taul, 88 Tex. 665, 32 S.W. 866."

In Browne v. King, Browne's interest in the land was to vest in him only "when recovered." Mr. Gordon was not obligated by the instrument through which he claims to recover any land. His grantors owned the land and as a fee conveyed him a one-fourth undivided interest to defend their present title; they conveyed him a present title to defend their present title.

Again, in construing the instrument, appellant insists that it is a mere power of attorney. That contention is denied. The instrument is a simple contract whereby Watson and Parker retained Mr. Gordon in his professional relation as a lawyer to defend their title. It did not authorize him to do and perform any act for the grantors in their name, place and stead. Under this instrument, Mr. Gordon could perform no act not inherent in the duty owed by a lawyer to his client. On this point we quote the following authorities: 33 Words & Phrases, Perm.Ed., Power of Attorney, p. 159.

(a) "A power or letter of attorney is an instrument by which the authority of one person to act in the place and stead of another as attorney in fact is set forth. White v. Furgeson, 29 Ind.App. 144, 64 N.E. 49, 51."

(b) "A power of attorney is an instrument by which the authority of an attorney in fact or private attorney is set forth."

33 Words & Phrases, Perm.Ed., Power of Attorney, p. 159: "Any written instrument whereby person authorizes another to act for him is 'power of attorney,' * * *."

Appellant presents the following additional points against the court's judgment:

■ (1) The court erred in not submitting to the jury the issue of five years' limitation. This contention is denied. The evidence was wholly insufficient to support a continuous, adverse possession and claim for five years, with payment of taxes.

■ (2) Appellee was estopped to assert his equitable title, advanced on appellant's construction of the evidence that appellee's fee for representing Watson and Parker in the Gallup lawsuit was paid him in cash. On this point appellant advances the following proposition: "It is absurd to say that Mr. Gordon, owning a one-fourth (1/4th) interest could sell the land for cash, take his one-fourth (1/4th) of the cash and still own one-fourth (1/4th) of the land. This is what he claims to be able to do in this suit."

That issue was not raised by the evidence. On this point Mr. Gordon testified:

"Q. Mr. Gordon, when you were representing these people, isn't it a fact that when this instrument was made and when Olive-Sternenberg Lumber Company paid the consideration, isn't it a fact that Mr. Parker paid you over Twelve Hundred ($1200.00) Dollars as an Attorney fee in the case? A. No. Paid me my pro rata share of the value of the timber on the land that had been sold.

"Q. How's that? A. No. Paid me my pro rata share of the value of the timber on the land, that had been sold. I have the exact amount.

"Q. Twelve Hundred Four ($1204.—) Dollars and something? A. Twelve Hundred Four ($1204.19) Dollars and Nineteen Cents, I think."

Mr. Parker, one of Mr. Gordon's grantors, testified:

"A. Well, as I recollect it, that was to reimburse him for services that he rendered in the case. There had been this going on. After we made the contract with Mr. Gordon, Mr. Watson went out on the land and removed some of the piling,—might have made some ties on it—and we had in that contract an agreement to account to Mr. Gordon for such timber we moved off of his undivided part of it, and that may have been part of that Twelve Hundred ($1200.00) Dollars. But anyhow, following this Olive-Sternenberg deal, I sent him the Twelve Hundred ($1200.00) Dollars.

"Q. Did you send it to him? I believe you practically said so. Did you send it to him as a fee for the services rendered? In other words, was it in payment of the services of the suit?

"Mr. James Parker: We object to that as attempting to vary the terms of the written instrument, Your Honor.

"The Court: I sustain the objection. That has already been passed on. I don't see how that could possibly affect it."

Mr. Watson, the other grantor, testified:

"Q. I will ask you, Mr. Watson, who employed Mr. Gordon in the case? A. I think I did. I am not sure, but I think I went to his office. I am not sure of that.

"Q. I will ask you to state whether or not Mr. Gordon was paid for the services he rendered in that case?

"Mr. James Parker: We object to that, Your Honor, for the same reason.

"The Court: I sustain the objection."

It thus appears that Mr. Gordon testified positively that he was paid no money as an attorney's fee; that the money paid him was for the value of timber that had been sold from the land. As we construe the statement of facts, no issue was made against Mr. Gordon's statement that the money received by him—$1,204.19—was paid for timber and not as a fee. The testimony of Watson and Parker on this point, tendered by appellant, was excluded, and appellant has brought forward no exception complaining of that ruling. Mr. Gordon's testimony has corroboration in the fact that his fee was to be one-fourth of the land; the amount received by him, $1,204.19, does not represent one-fourth of the amount paid by appellant to Watson and Parker for the land.

(3) On our conclusion that Mr. Gordon paid for his interest in the land by rendering legal services, the following proposition from Browne v. King, supra, denies appellant's contention that appellee had nothing more than a mere equity in the land: "But, at best, Browne's right was only an equity; and if fully perfected by his entire performance of the contract could only have amounted to an equitable interest. If it be admitted that at the time of the sale by the Acebos of the legal title to Mrs. King he had done everything required of him under the contract up to that time, and that but for such sale he would have been able to recover the land, yet, if Mrs. King bought the title without notice of his equity, she would be entitled to protection as an innocent purchaser. Mrs. King had constructive notice of the contract when she purchased the legal title. But the contract of itself conferred no equity. Performance by Browne of the agreement was necessary to the creation of his equitable interest, and therefore to affect the legal title in Mrs. King's hands with his interest it was necessary that he establish that she bought with notice of such performance. There was no proof that she had such notice. According to the record she knew nothing of Browne's relation to the suit of the Acebos or of anything he had done in performance of his contract with them. The record of the contract gave her no such notice, and the suit itself in no way disclosed Browne's connection with it."

Under that proposition, appellant had constructive notice of Mr. Gordon's contract when it took its conveyance to the 640 acres of land, and that Mr. Gordon's interest in the land was in payment of his professional services as a lawyer. Appellant had actual notice that Mr. Gordon was discharging the duties of his employment and that the settlement of the Gallup lawsuit constituted a full discharge by him of all duties owed by him to Watson and Parker as their lawyer. So, appellant bought with notice that Mr. Gordon had performed all the duties imposed upon him by the contract.

(4) Appellee's title was not subject to appellant's plea of stale demand, nor to the statute of limitations of four years. His right to, or interest in the land, was not a mere equity, nor was he required to sue for specific performance of the promise by Watson and Parker to execute to him "a good and sufficient deed to said 160 acres of said land" when he had rendered the legal services called for by his contract with them. These propositions have direct support in Gainer v. Cotton, 49 Tex. 101, 120: "If, by the bond, any right to or interest in the land vested in Love, it was not a mere equity, which might become stale or be lost by his failure or neglect to assert it, or to demand some other character of conveyance. The purchase-price being fully paid, and the sale being absolute and unconditional, so was Love's title. A more formal conveyance, or one which would better serve as evidence of the sale, might be desirable, and, if stipulated for, might be enforced by the appropriate tribunal, if its aid were invoked in the proper time and manner; but when made, it would merely afford more formal or satisfactory evidence of the title already vested in the purchaser, and would not confer a different character of right to that by which he previously held."

(5) The evidence did not raise the issue of "presumption to title" under Article 5519a, Vernon's Ann.Civ.St. Appellant failed to render the taxes and to pay the taxes on the land in controversy for the year 1916; the suit was filed in 1939. Therefore, appellant did not pay "taxes thereon annually before becoming delinquent for as many as twenty-five years during such period," as required by Article 5519a. On this point, on motion to correct the evidence, the court made the following fact finding: "I find that Olive Sternenberg Lumber Company did not render or pay taxes for the years 1911 and 1916 upon the Lawrence & Creecy Survey."

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.

### On Rehearing.

We have reviewed with care appellant's motions for rehearing and for additional fact conclusions. As we understand the record, all fact conclusions requested by appellant, which have support in the record, are given in the opinion.

Appellant's motions are overruled.